## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANGEL RUIZ RIVERA

Petitioner

v.                                                  07-0019 ~~(EGS)~~(RBW)

ALBERTO R. GONSALES,
Et Al., Et Al.,

Respondents

---

### PETITIONER'S SURREPLY

TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
(HUSDCDC):

Comes now the Petitioner, Angel Ruiz Rivera (ARR), appearing here Pro Se Ipso, and

respectfully files this Sur-Reply to the Respondents' Reply:

### I. The Petitioner Does Not Seeks Discretionary Action

The Respondents aver that the Petitioner allegedly seeks this writ of mandamus to be

issued upon what they arbitrarily, capriciously and not in accordance with the law,[1] very

subjectively and accommodatingly label as "discretionary action." As this HUSDCDC will

corroborate, nothing is further from the truth. For this legally untenable proposition they raise in

---

[1] The law applicable here is composed of: 1) the 28 CFR Parts 0 and 45 (Exhibit 1, included in 2 different formats); the U.S. Department of Justice (USDJ), Office of Professional Responsibility (OPR), Process (Exhibit 2); the USDJ-OPR Policies and Procedures (Exhibit 3); the OPR Analytical Framework (Exhibit 4); the U.S. Attorney's Manual (USAM), most particularly, Title 1, Organization and Functions Manual, Standards of Conduct 1-4.000 et seq., (Exhibit 5) ; the Office of the Attorney General (OAG), Order No. 1931-94, providing for the Jurisdiction For Investigation Of Allegations Of Misconduct By Department of Justice Employees (Exhibit 6); and the Code of Ethics of the D.C. Bar as mandated by the Office of the Bar Counsel of Washington, D.C. (Exhibit 7).

RECEIVED

JUN 2 0 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

acts, nor could they, since there is none in the applicable law cited above. Furthermore, the use of the disjunctive conjunction "or" between "investigate complaints" and "recommend disciplinary actions" in the above excerpt cited is abused by the Respondents with the unavowed purpose of tergiversating the difference between these two distinct acts in trying to confuse this HUSDCDC.

From a fair reading of all of the applicable law cited above, it is clear that the duty to "investigate complaints" is not discretional, although the duty to "recommend disciplinary actions" could conceivably be, once and only if the investigation was first, performed according to the applicable law and second, properly dismissed on its merits. In the instant controversy, the Respondents have yet to produce an iota of evidence in support of their claim that they in fact did comply with their ministerial duty in even investigating the complaint, and much less have they produced any evidence whatsoever to support their irresponsible claim that they did not abuse their discretion in dismissing or denying it on its merits or lack thereof. For the above reasons only, without more, the Respondents' Motion To Dismiss, must fail.

All the applicable law cited above, pertinent excerpts found, unmistakably signal to the ministerial rather than discretionary obligation to evaluate the complaints for professional and/or prosecutorial misconduct by the OPR and/or OIG. For example, the OPR Process states:

> OPR receives reports of allegations of misconduct made against Department of Justice attorneys from many sources. Nearly half of all such allegations are reported to OPR either by the attorney involved or by other Department sources. The remaining complaints received by OPR come from a variety of sources, including private attorneys, defendants and civil litigants, other federal agencies, state or local government officials, judicial and congressional referrals, and media reports. Judicial findings of misconduct are given expedited attention by OPR.
> Upon receipt, OPR reviews each allegation and determines whether further investigation is warranted. **The determination whether to open an investigation in a specific case is a matter of investigative judgment. Many factors are weighed, including the nature of the allegation, its apparent credibility, its specificity, its susceptibility to verification, and the source of the allegation. A decision to open a**

4

Misconduct by Department of Justice Employees - Reporting Misconduct Allegations," provides that:

**All** Department employees **must** report to their United States Attorney, Assistant Attorney General, or other appropriate supervisor any evidence or non-frivolous allegation of misconduct. An employee who wishes to report directly to OPR or OIG may do so.

The supervisor **must** evaluate whether the misconduct at issue is serious. If so, the supervisor must report it to OPR or OIG, as appropriate. If the supervisor is uncertain, he or she may contact OPR or OIG to determine what action to take. If the supervisor was involved in the alleged misconduct, she or he **must** bring it to the attention of a higher ranking official.

Any statement by a judge or magistrate indicating a belief that a Department attorney has engaged in misconduct, or taking under submission a claim of misconduct, **must** be reported to a supervisor. The supervisor **must** report to OPR immediately any evidence or non-frivolous allegation of serious misconduct.

Judicial findings of attorney misconduct and judicial requests for an inquiry into possible misconduct **must** immediately be reported to OPR and the attorney's supervisor, **regardless of whether the matter is regarded as frivolous or non-serious**. Judicial findings of misconduct are, except in extraordinary cases, expeditiously investigated by OPR, **without awaiting further judicial or appellate proceedings**. (Emphasis ours).

Notice the use of the adjective "must" throughout the above. That strong and direct language definitely cannot be equated to any discretion as the appearing U.S. Attorneys pretend in their cover up of the cover up.

Finally, in this vein, we must refer this HUSDCDC to the following pertinent excerpt:

### 6. The Investigative Process in a Typical Matter

OPR's investigations involve a wide range of allegations, and the investigative methods used vary accordingly. **The vast majority of complaints received by OPR each year are reviewed and determined not to warrant investigation because, for example, the complaint is frivolous on its face, it is vague and unsupported by any evidence, or it is not within OPR's jurisdiction.**

The pertinence of the above quote is that in the instant controversy the OPR has not denied that it had jurisdiction over the complaint in question, nor could they, since it is obvious and evident that they had it. The OPR has also not claimed that the complaint was frivolous on its face, vague or unsupported, nor could they, simply because it is difficult to find a complaint with more

6

referred to and quoted in the Hoglund Case, this Court said:

> 'Every statute to some extent requires construction by the public officer whose duties may be defined therein. **Such officer must read of law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial,** although depending upon a statute which requires, in some degree, [280 U.S. 306, 319] a construction of its language by the officer. **Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, nor how plainly they violated their duty in refusing to perform the act required.'** See, also, Ballinger v. United States ex rel. Frost, 216 U.S. 240, 250. In this case, the Secretary interpreted and applied a statute in a way contrary to its explicit terms, and in so doing departed from a plain official duty. (Emphasis ours).

In addition to the above, with respect to this issue, we raise the following pertinent and

relevant teachings from the Court, which antecede our Wilbur case cited above, and which

are clearly applicable to the circumstances of the instant controversy:

> True, this court always is reluctant to award or sustain a writ of mandamus against an executive officer, **and yet cases sometimes arise when it is constrained by settled principles of law and the exigency of the particular situation to do so.** Kendall v. United States, 12 Pet. 524, 9 L. ed. 1181; United States v. Schurz, 102 U.S. 378 , 26 L. ed. 167; Roberts v. United States, 176 U.S. 221 , 44 L. ed. 443, 20 Sup. Ct. Rep. 376; Garfield v. United States, 211 U.S. 249 , 53 L. ed. 168, 29 Sup. Ct. Rep. 62; Ballinger v. United States, 216 U.S. 240 , 54 L. ed. 464, 30 Sup. Ct. Rep. 338. An see Noble v. Union River Logging R. Co. 147 U.S. 165 , 37 L. ed. 123, 13 Sup. Ct. Rep. 271; American School of Magnetic Healing v. McAnnulty, 187 U.S. 94 , 47 L. ed. 90, 23 Sup. Ct. Rep. 33. This, we think, is such a case.
>
> **The law relating to mandamus against a public officer is well settled in the abstract, the only doubt which arises being whether the facts regarding any**

8

particular case bring it within [176 U.S. 221, 230] the law which permits the writ to issue where a mere ministerial duty is imposed upon an executive officer, which duty he is bound to perform without any further question. If he refuse under such circumstances, mandamus will lie to compel him to perform his duty. This is the principle upheld by this court in United States ex rel. Dunlap v. Black, 128 U.S. 40 , 32 L. ed. 354, 9 Sup. Ct. Rep. 12,....

...

Unless the writ of mandamus is to become practically valueless, and is to be refused even where a public officer is commanded to do a particular act by virtue of a particular statute, this writ should be granted. Every statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform. But that does not necessarily and in all cases make the duty of the officer anything other than a purely ministerial one. If the law direct him to perform an act in regard to which no discretion is committed to him, and which, upon the facts existing, he is bound to perform, then that act is ministerial, although depending upon a statute which requires, in some degree, a construction of its language by the officer. Unless this be so, the value of this writ is very greatly impaired. Every executive officer whose duty is plainly devolved upon him by statute might refuse to perform it, and when his refusal is brought before the court he might successfully plead that the performance of the duty involved the construction of a statute by him, and therefore it was not ministerial, and the court would on that account be powerless to give relief. Such a limitation of the powers of the court, we think, would be most unfortunate, as it would relieve from judicial supervision all executive officers in the performance of their duties, whenever they should plead that the duty required of them arose upon the construction of a statute, no matter how plain its language, nor how plainly they violated their duty in refusing to perform the act required.

In this case we think the proper construction of the statute was clear, and the duty of the Treasurer to pay the money to the relator was ministerial in its nature, and should have been performed by him upon demand. *ROBERTS v. U.S. EX REL. VALENTINE*, 176 U.S. 221 (1900)

A relatively recent decision from the Honorable U.S. Court of Appeals for the Tenth Circuit (HUSCA10C) which revisited this same issue in extenso, should better serve to provide this HUSDCDC with a more accurate frame of reference in order to persuade it of the Petitioners' posit in this vein.

[42] D. Relief in the Nature of Mandamus

9

[43] The district court also had jurisdiction under 28 U.S.C. § 1361, which provides:

[44] **The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff. Mandamus is the traditional writ designed to compel government officers to perform non-discretionary duties.** See Marbury v. Madison, 5 U.S. (1 Cranch) 137, 168--69 (1803). **Significantly, application of the mandamus remedy to require a public official to perform a duty imposed upon him in his official capacity is not limited by sovereign immunity.** In Houston v. Ormes, the Court held that **suits to compel federal officers "'to perform some ministerial duty imposed upon them by law, and which they wrongfully neglect or refuse to perform . . . would not be deemed suits against the United States within the rule that the Government cannot be sued except by its consent."'** 252 U.S. 469, 472-73 (1920) (quoting Minnesota v. Hitchcock, 185 U.S. 373, 386 (1902)); see also, e.g., Roberts v. United States ex rel. Valentine, 176 U.S. 221 (1900) (granting mandamus against the United States Treasurer); Washington Legal Foundation v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996).

[45] In federal courts, however, mandamus has had a curious history, which may account for its relative disuse. In Marbury, the Court held that the Supreme Court did not have original jurisdiction to issue writs of mandamus, impliedly suggesting that the writ might be available in the district courts. In 1813, however, the Court held that the Judiciary Act did not grant jurisdiction to federal courts to issue writs of mandamus except in aid of their jurisdiction. M'Intire v. Wood, 11 U.S. (7 Cranch) 504, 506 (1813); cf. 28 U.S.C. § 1651. That position, possibly a reflection of Jeffersonian notions of separation of powers,*fn10 lasted only 25 years. In Kendall v. United States ex rel. Stokes, 37 U.S. (12 Pet.) 524, 619--22 (1838), the Court held, ingeniously, without overruling M'Intire, that the federal circuit court for the District of Columbia had inherited the common law jurisdiction of the courts of Maryland, and thus had power to issue writs of mandamus. **That meant that mandamus was available against federal officials, but only in the District Court for the District of Columbia.** Obviously, that was inconvenient for plaintiffs in other parts of the country, and discouraged use of the writ. By enactment of the Mandamus and Venue Act of 1962, P.L. 87-748, § 1(a), 76 Stat. 744 (codified at 28 U.S.C. § 1361), Congress ended this historical anomaly and extended mandamus jurisdiction to all federal district courts.

[46] To be sure, with the abolition of the traditional common law forms of action, the writ of mandamus is no longer technically available. But Federal Rule of Civil Procedure 81(b) provides, "Relief heretofore available by mandamus . . . may be obtained by appropriate action or by appropriate motion under the practice prescribed in these rules." The generic "civil action" of the new rules, see Fed. R. Civ. P. 2, provides the form of action in which mandamus relief is now available. Congress confirmed the availability of relief "in the nature of mandamus" with the passage of the Mandamus and Venue Act, which grants the district courts "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.

[47] Federal courts have often invoked § 1361 as the jurisdictional basis for challenges to

federal prison conditions...... **We endorse this practice for challenges to the failure of prison officials to carry out non-discretionary duties.**
[48] **Mandamus relief is available only to compel a government officer to perform a duty that is "ministerial, clearly defined, and peremptory" as opposed to duties within the officer's discretion.** Carpet, Linoleum & Resilient Tile Layers, Local Union No. 419 v. Brown, 656 F.2d 564, 566 (10th Cir. 1981) (quoting Schulke v. United States, 544 F.2d 453, 455 (10th Cir. 1976)). **But the fact that an official's duty entails some discretion does not necessarily shield him from mandamus.** As Chief Justice Taft explained, [49] **Mandamus issues to compel an officer to perform a purely ministerial duty. It cannot be used to compel or control a duty in the discharge of which by law he is given discretion. The duty may be discretionary within limits. He can not transgress those limits, and if he does so, he may be controlled by injunction or mandamus to keep within them. The power of the court to intervene, if at all, thus depends upon what statutory discretion he has.**
[50] Work v. United States ex rel. Rives, 267 U.S. 175, 177 (1925).
[51] Mr. Simmat's claim falls within this domain. .... This is not to say that Mr. Simmat is entitled to the full measure of relief demanded in his complaint, .... **We do hold, however, that Mr. Simmat is not barred by sovereign immunity from obtaining judicial relief on his constitutional claim.**
[52] In sum, as a result of congressional action in 1875 (creating general federal question jurisdiction), 1962 (extending mandamus jurisdiction to all federal district courts), and 1976 (waiving sovereign immunity in cases for non-monetary relief against federal officials and agencies), **federal district courts now have jurisdiction over claims** by federal prisoners **against federal** prison **officials seeking vindication of their constitutional rights under either 28 U.S.C. § 1331 or 28 U.S.C. § 1361, and may obtain relief in the nature of either injunction or mandamus.** In many cases, these forms of relief may be interchangeable. See, e.g., Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 318 (1958) ..."[t]he principle is no different than if mandamus were sought"); Fallini v. Hodel, 783 F.2d 1343, 1345 (9th Cir. 1986) ("In effect, the injunction is no different than the mandamus. When the effect of a mandatory injunction is equivalent to the issuance of mandamus it is governed by similar considerations."); Carpet, Linoleum, and Resilient Tile Layers, 656 F.2d at 567 ("A mandatory injunction such as the one sought here is essentially in the nature of mandamus."). **In cases seeking specific relief of a non-discretionary nature, mandamus would seem to be the more closely tailored avenue for relief.** Simmat v. United States Bureau of Prisons, 413 F.3d 1225 (10th Cir. 07/01/2005).

All the above cited applicable jurisprudence serves to demonstrate without a doubt that the

instant Mandamus Petition should issue especially under the extraordinary circumstances of the

instant controversy where it is obvious that a cover up of the U.S. Attorneys' complained about

being covered up by the appearing U.S. Attorneys, in overt fraud upon the court. There is nothing in the applicable law cited above to even suggest the outrageous proposition that the Respondents pretend this HUSDCDC to sustain here, that there is allegedly no obligation to even consider every complaint, and that in such event that obligation is discretionary. See Reply at p.2.

## If Discretionary It Was A Blatant Abuse Of Discretion

Even assuming in arguendo that the mandates of the applicable law were to be considered or interpreted by this HUSDCDC as discretionary in terms of the complaints for professional and/or prosecutorial misconduct, the overwhelming, smoking gun, beyond doubt and clear and convincing evidence produced by the Petitioner in the instant controversy should persuade the most skeptical, and even biased and full of prejudice evaluator, of the shameful reality that the total neglect of the complaint in question was a blatant abuse of discretion and a vulgar cover up. This is not a case where the Petitioner is claiming that the complaint should had be decided in his favor. It is a claim where the Petitioner is requesting that the HUSDCDC makes sure that the complaint is investigated accord the applicable law, something which according to the lack of any evidence whatsoever produced by the Respondents, is a fact that this HUSDCDC must take as true at least at this motion to dismiss threshold. For this reason only, the Respondents Motion To Dismiss must also legally fail.

Additionally there are reasons of public interest behind the issuance of this writ of mandamus. The last resource available to any citizen of this otherwise Great Republic is to recur to the OPR in situations such as this. If the courts are to allow the OPR to get away with this sort of cover up of its U.S. Attorney's professional and/or prosecutorial misconduct, then this would be tantamount to the courts aiding and abetting in the cover up of same.

12

If something must be added, which we doubt, this HUSDCDC should keep in mind that there are no administrative remedies available to the neglect of a complaint by the OPR, additional reason why, this writ of mandamus should issue.

Finally, this HUSDCDC should consider the following:

Does the OPR has the discretion to decide or rule against the overwhelming evidence submitted justifying the complaint for misconduct filed?

Does the OPR has the discretion to ignore altogether a complaint for misconduct against all the overwhelming evidence produced?

In view of all of the overwhelming smoking gun and beyond doubt evidence, can the Respondents premature Motion To Dismiss be legally tenable?

Can the Respondents' be legally sustained in view of the fact that they have not produced to this court an iota of evidence demonstrating that the complaint for misconduct was even considered?

Is the pseudo-claim made by the Respondents that the duty to rule upon the complaint is discretional and not ministerial based upon any legal or logical basis?

If the pseudo-audit findings upheld by the USDE legal counsels were against the law and the overwhelming smoking gun and beyond doubt evidence produced, and since all the intervening U.S. Attorneys had and have all that exonerating evidence before them, how can their heretofore neglect to prevent the conspiracy by the former be legally sustained?

## II. The Petitioner Is Entitled To Discovery

This Court has held that the common law right of access extends beyond judicial records to the "public records" of all three branches of government, Washington Legal Found. v. United States Sentencing Commission, 89 F.3d 897, 903-04 (D.C. Cir. 1996), and we are bound by our precedent. *Center for National Security Studies v. U.S. Department of Justice*, 331 F.3d 918 (D.C.Cir. 06/17/2003).

13

Petitioner reiterates that he is entitled to at least a modicum of discovery de minimis. But besides Petitioner, more importantly, this HUSDCDC, in order to be put in a position where it can make an intelligent and informed decision, needs to know de minimis: Who decided not to investigate the complaint and why? If it was in fact ever investigated, who did it, when, how and why it was neglected against the overwhelming evidence produced? Why it was not referred to the OPR-OIG and if it was, when, how, by whom and why it was neglected against the overwhelming evidence produced? The records of the OPR regarding the complaint for professional and/or prosecutorial misconduct definitely fall within the definition of "public records" as the above cited opinion illustrate, ergo, Petitioner certainly has a right to it and as such should be readily accessible to him, and more specially to this own HUSDCDC, as mandated by the Federal Rules of Civil Procedure governing discovery in this litigation or any other for that matter.

Moreover, the own OPR Policies and Procedures, cited above, under "4. **Receipt and Initial Review of Allegations of Misconduct**", state:

> OPR receives allegations against Department attorneys from a variety of sources, including self-referrals and referrals of complaints by officials in U.S. Attorneys' offices and litigating divisions, private attorneys, defendants and civil litigants, other federal agencies, state or local government officials, judicial and congressional referrals, and media reports. OPR also conducts periodic searches of legal databases to identify opinions containing judicial findings of misconduct.
>
> Information provided to OPR **may** be confidential. **In appropriate cases, OPR will disclose that information only to the extent necessary in order to resolve the allegation.**

Notice that here the adjective used is "may" and not "must". Ergo, as we have seen the tergiversation of the legal concepts by the appearing U.S. Attorneys is obvious. When they see "must" they interpret it as discretionary and when they see "may", they interpret it as ministerially obligatory. It is as if they were experiencing some sort of forensic dyslexia. In any

14

event, what is pertinent here is that the language of the own OPR clearly establish that in appropriate cases such as the instant one, **OPR will disclose that information only to the extent necessary in order to resolve the allegation.** The Petitioner is requesting exactly what, their own Policies and Procedures prescribe and mandate, no more, no less.

Finally regarding this issue we find in 9. **Post-investigation Procedures,** the following:

At the conclusion of the investigation, OPR makes findings of fact and reaches conclusions as to whether professional misconduct has occurred. OPR may find professional misconduct in two types of circumstances: (1) where an attorney **intentionally** violated an obligation or standard imposed by law, applicable rule of professional conduct, or Department regulation or policy, or (2) where an attorney acted in **reckless disregard** of his or her obligation to comply with that obligation or standard. OPR may also find that the attorney used poor judgment or made a mistake; such findings do not constitute findings of professional misconduct.
**If OPR determines that no misconduct or poor judgment occurred, the attorney who was investigated, the complainant, and other appropriate parties are notified of that result.**

In view of the above, the least that the OPR should produce are the copies of these notifications. Absent them, this HUSDCDC must take as true the Petitioner's claim that the complaint was never even investigated, period.

## Conclusion

[32] It remains to consider whether the district court could have exercised mandamus jurisdiction. No separate waiver of sovereign immunity is required to seek a writ of mandamus to compel an official to perform a duty required in his official capacity. Wash. Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C. Cir. 1996) (citing Dugan v. Rank, 372 U.S. 609, 621--22 (1963); Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 689 (1949)).
[33] Mandamus is a "drastic" remedy, "to be invoked only in extraordinary circumstances." Allied Chem. Corp. v. Daiflon, Inc., 449 U.S. 33, 34 (1980). "Mandamus is available only if:
[34] (1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to plaintiff." Power v. Barnhart, 292 F.3d 781, 784 (D.C. Cir. 2002) (internal quotation marks omitted). *Fornaro v. James*, 416 F.3d 6 (D.C.Cir. 07/26/2005).

For all the above reasons, the Respondents Motion To Dismiss should be denied at least at this stage of the proceedings and the modicum of discovery that the circumstances dictate be granted.

So we state, allege and pray. Respectfully submitted, today June 15, 2007.

Angel Ruiz Rivera
Pro Se Ipso
P.O. Box 191209
San Juan, P.R. 00919-1209.
787-435-3512
aruizrivera@aol.com

CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, appearing here Pro Se ipso, hereby certify that I have sent a copy of this writing by priority mail of the USPS to the appearing counsel for the Respondents, Ms. Judith A. Kidwell, AUSA, 555 Fourth St., NW.-Room E 4905, Washington, D.C. 20530. (202) 514-7250.

EXHIBIT 1

Drug Administration, 5100 Paint Branch Pkwy., College Park, MD 20740–3835, 301–436–1302.

**SUPPLEMENTARY INFORMATION:** In the **Federal Register** of June 2, 2006 (71 FR 31927), FDA amended the color additive regulations to add § 73.350 *Mica-based pearlescent pigments* (21 CFR 73.350) to provide for the safe use safe use of titanium dioxide coated mica-based pearlescent pigments as color additives in the following foods: Cereals, confections and frostings, gelatin desserts, hard and soft candies (including lozenges), nutritional supplement tablets and gelatin capsules, and chewing gum.

FDA gave interested persons until July 3, 2006, to file objections or requests for a hearing. The agency received no objections or requests for a hearing on the final rule. Therefore, FDA finds that the effective date of the final rule that published in the **Federal Register** of June 2, 2006, should be confirmed.

### List of Subjects in 21 CFR Part 73

Color additives, Cosmetics, Drugs, Medical devices.

■ Therefore, under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321, 341, 342, 343, 348, 351, 352, 355, 361, 362, 371, 379e) and under authority delegated to the Commissioner of Food and Drugs, and redelegated to the Director, Office of Food Additive Safety, notice is given that no objections or requests for a hearing were filed in response to the June 2, 2006, final rule. Accordingly, the amendments issued thereby became effective July 5, 2006.

Dated: September 8, 2006.

**Laura M. Tarantino,**

*Director, Office of Food Additive Safety, Center for Food Safety and Applied Nutrition.*

[FR Doc. E6–15275 Filed 9–14–06; 8:45 am]

**BILLING CODE 4160-01-S**

---

## DEPARTMENT OF JUSTICE

### 28 CFR Parts 0 and 45

**[AG Order No. 2835–2006]**

### Reporting Violations to the Office of the Inspector General and the Office of Professional Responsibility; Delegations of Authority

**AGENCY:** Department of Justice.

**ACTION:** Final rule.

**SUMMARY:** This final rule amends the regulations of the Department of Justice to codify the obligation to report misconduct to the Office of the Inspector General (OIG) and the

Department of Justice Office of Professional Responsibility (OPR), to reflect the conferral of statutory law enforcement authority on OIG special agents, to update the structure, functions, and responsibilities of OPR, and to reflect the current organizational structure of the OIG.

**DATES:** *Effective Date:* September 11, 2006.

**FOR FURTHER INFORMATION CONTACT:** Mary Anne Hoopes, Associate Counsel, Office of Professional Responsibility, United States Department of Justice, Washington, DC 20530 (202) 514–3365 (regarding matters related to OPR), or Gail A. Robinson, General Counsel, Office of the Inspector General, United States Department of Justice, Washington, DC 20530 (202) 616–0646 (regarding matters related to the OIG).

**SUPPLEMENTARY INFORMATION:** 1. This rule amends 28 CFR part 0 to clarify the delegation of authority by the Attorney General to the Counsel for Professional Responsibility and to codify authority of the Inspector General. This rule permits OPR and the OIG to investigate specific matters, make such recommendations as appropriate to the Deputy Attorney General and the Attorney General, and coordinate their activities to improve the professionalism of the Department and to reduce waste, fraud, and abuse.

2. This rule amends 28 CFR part 45 by adding three new sections. The rule codifies the Attorney General's April 12, 2002 Memorandum For Department of Justice Employees Regarding the Duty to Report Misconduct and Cooperate with Investigators. This Memorandum provides for notifying the OIG of fraud, waste, abuse, or misconduct, except for those matters in the jurisdiction of OPR. This rule is not a substantive change, but merely codifies existing practice. The rule also implements section 308 of the Department of Justice Appropriations Authorization Act for FY 2002 and 2003, Public Law 107–273 (Nov. 2, 2002), which amended 5 U.S.C. app. 3, 8E, and which provides in pertinent part:

> The Attorney General shall ensure by regulation that any component of the Department of Justice receiving a nonfrivolous allegation of criminal wrongdoing or administrative misconduct by an employee of the Department of Justice, except with respect to allegations described in subsection (b)(3) [matters within the investigative jurisdiction of the Department of Justice Office of Professional Responsibility], shall report that information to the Inspector General.

This rule is also a codification of preexisting principles as set forth in the *United States Attorneys' Manual,*

§ 1–4.100, *Standards of Conduct Allegations of Misconduct by Department of Justice Employees Reporting Misconduct Allegations.* Although the language of section 308 of P.L. 107–273 is not identical to the prior regulations on this subject, the Attorney General interprets the statutory language as intended to codify the prior and existing practice.

3. This rule revises the description of OPR to reflect the changes made in that Office's jurisdiction since its creation on December 9, 1975, including AG Order 833–79 (45 FR 27754–55, April 24, 1980); AG Order 1931–94 (November 8, 1994); AG Order 2167–98 (63 FR 35847, July 8, 1998), AG Order 2190–98 (63 FR 62937–01, November 10, 1998), and AG Order 2492–2001 (66 FR 37902–01, July 20, 2001).

As originally constituted, OPR's jurisdiction was extraordinarily broad. OPR was empowered to "[r]eceive and review any information or allegation concerning conduct by a Department employee that may be in violation of law, regulations or orders, or of applicable standards of conduct or may constitute mismanagement, gross waste of funds, abuse of authority, or a substantial and specific danger to public health or safety." 28 CFR 0.39a(a). Its role in investigating those allegations, however, was relatively narrow, in keeping with its small size. OPR was to "[m]ake such preliminary inquiry as may be necessary to determine whether the matter should be referred to another official within the Department," 28 CFR 0.39a(c), and then to make an appropriate referral either to the head of the Department of Justice component to which the employee was assigned, or to that component's internal inspection unit, if no violation of law was alleged, or to the appropriate investigative agency, if the conduct appeared to involve a violation of law, 28 CFR 0.39a(d)(1) and (2). OPR then received reports from the investigating component on the status and outcome of investigations referred by OPR. 28 CFR 0.39a(e)(1). If OPR deemed it inappropriate to refer an allegation to the employing component, it was to refer the matter to the Attorney General and the Deputy Attorney General, or, if that would be inappropriate, to the Associate Attorney General or the Solicitor General. 28 CFR 0.39a(d)(3). In that event, OPR was to "recommend what further action should be undertaken" with respect to the allegation, "including the assignment of any task force or individual to undertake the action recommended." 28 CFR 0.39a(g). Finally, under 28 CFR 0.39a(h), OPR was authorized to

"[u]ndertake any investigation of a matter referred under paragraph (d)(3) of this section that may be assigned by the Attorney General, the Deputy Attorney General, the Associate Attorney General, or the Solicitor General, or cooperate with any other organization, task force, or individual that may be assigned by such official to undertake the investigation." 28 CFR 0.39a(h). Consistent with the Attorney General's authority to assign functions within the Department, the regulations provided that OPR was also authorized to "[u]ndertake any other responsibilities assigned by the Attorney General including duties relating to the improvement of the performance of the Department." 28 CFR 0.39a(k).

Following the creation of the OIG in 1989, the role of OPR was focused specifically on addressing allegations of misconduct by Department attorneys and law enforcement personnel, accomplished through direct investigation by OPR or by OPR's oversight of the Offices of Professional Responsibility of the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA). In 2001, general oversight of those offices was transferred to the OIG, while OPR was charged with investigating allegations of misconduct involving Department attorneys that relate to the exercise of their authority to investigate, litigate, or provide legal advice, as well as allegations of misconduct by law enforcement personnel when they are related to allegations of attorney misconduct within the jurisdiction of OPR.

The Department believes that it is appropriate to update the organizational language within 28 CFR part 0 at this time to reflect more accurately the delegations of authority and investigative assignments made by statute and the Attorney General. Although the organic provisions of 28 CFR part 0 do not create substantive or procedural rights as a general proposition, clarity of understanding of the organization of, and responsibilities within, the Department benefits the public in general. In this instance, the Department is clarifying the internal investigative functions of OPR.

4. This rule also amends 28 CFR part 0 to reflect the conferral of statutory law enforcement authority on OIG special agents. The Department's organizational regulations, 28 CFR 0.29j, authorized OIG special agents to perform law enforcement functions as Special Deputy United States Marshals. Section 812 of the Homeland Security Act, Pub. L. 107–296, § 812, 116 Stat. 2135, 2222 (Nov. 25, 2002), amending section 6(e)

of the Inspector General Act of 1978, provided that the Attorney General may, through the adoption of guidelines, authorize Special Agents under the direction of an Assistant Inspector General for Investigations to exercise the following law enforcement powers:

(A) To carry a firearm while engaged in official duties or as expressly authorized by the Attorney General;

(B) to make arrests, while engaged in official duties or as expressly authorized by the Attorney General, (i) for federal offenses committed in the officer's presence, or

(ii) for any federal felony if the agent has reasonable grounds to believe that the person has committed or is committing such felony; and

(C) to seek and execute federal arrest and search warrants issued upon probable cause.

As provided for in this section, the Attorney General adopted the *Attorney General Guidelines for Offices of Inspector General with Statutory Law Enforcement Authority* ("Attorney General Guidelines" or "Guidelines") on December 8, 2003, authorizing and governing the exercise of these authorities for Inspector General offices of the Departments and agencies specified in section 6(e)(3) of the Inspector General Act, as amended. These Guidelines are applicable to Inspectors General under section 6(e) of the Inspector General Act, as amended, and Special Agents under their authority, and apply operational guidelines and policies of the Department of Justice in the performance of criminal law enforcement investigations, *e.g.*, the Attorney General's Guidelines on General Crimes, Racketeering Enterprise, and Terrorism Enterprise Investigations; the Attorney General's Guidelines Regarding the Use of Confidential Informants; and the Attorney General's Memorandum on Procedures for Lawful, Warrantless Monitoring of Verbal Communications, as amended and updated, and any other Attorney General guidelines applicable to criminal investigative practices. The Attorney General Guidelines and these operational guidelines are subject to change.

In view of the promulgation of the Attorney General Guidelines, the Department is making conforming amendments to the existing regulations governing the Department's OIG, in order to reflect the provisions of section 6(e) and the issuance of the Attorney General's Guidelines.

5. This rule also amends 28 CFR 0.29(a) to reflect the current organizational structure of the OIG.

**Regulatory Matters**

This rule was not published for public comment and takes effect immediately because it pertains to matters of internal agency management. See 5 U.S.C. 553(b) and (d). In accordance with 5 U.S.C. 605(b), the Attorney General certifies that this rule does not have a significant adverse economic impact on a substantial number of small entities and does not have an effect beyond the internal operating procedures of the Department.

This rule is not considered to be a "rule" within the meaning of section 3(d) of Executive Order 12866, nor does this rule have federalism implications warranting the preparation of a federalism assessment in accordance with section 6 of Executive Order 12612. This rule is not a "rule" within the meaning of the Congressional Review Act, 5 U.S.C. 801 *et seq.*

**List of Subjects**

*28 CFR Part 0*

Government employees, Delegations of authority.

*28 CFR Part 45*

Government employees, Ethics.

■ Accordingly, by virtue of the authority vested in me as Attorney General, including 5 U.S.C. 301 and 28 U.S.C. 509, 510, Part 0 and Part 45 of title 28 of the Code of Federal Regulations are amended as follows:

**PART 0—ORGANIZATION OF THE DEPARTMENT OF JUSTICE**

■ 1. The authority citation for part 0 continues to read as follows:

**Authority:** 5 U.S.C. 302; 28 U.S.C. 509, 510, 515–519.

■ 2. Paragraph (a) of § 0.29 is revised to read as follows:

**§ 0.29  Organization.**

(a) The Office of the Inspector General consists of an immediate office, which is composed of the Inspector General, the Deputy Inspector General, and the Office of the General Counsel, and five major divisions, each headed by an Assistant Inspector General. The five OIG divisions are: Audit; Investigations; Evaluation and Inspections; Oversight and Review; and Management and Planning.

\*    \*    \*    \*    \*

■ 3. Section 0.29j is revised to read as follows:

**§ 0.29j  Law enforcement authority.**

Subject to guidelines promulgated by the Attorney General, Special Agents of

**54414**    **Federal Register** / Vol. 71, No. 179 / Friday, September 15, 2006 / Rules and Regulations

the Office of the Inspector General are authorized to:

(a) Detect and assist in the prosecution of crimes in violation of the laws of the United States and to conduct such other investigations regarding matters that are within the jurisdiction of the Inspector General;

(b) Serve legal writs, summons, complaints, and subpoenas issued by the Inspector General or by a Federal grand jury;

(c) Receive, transport, and provide safekeeping of arrestees and other persons in the custody of the Attorney General or detained aliens;

(d) Arrest without warrant any person for an offense against the United States committed in the presence of the Special Agent or whom the Special Agent has reasonable grounds to believe has committed or is committing a felony cognizable under the laws of the United States;

(e) Seek and execute search and arrest warrants;

(f) Carry firearms while on-duty; and

(g) Carry firearms while off-duty as authorized by the Inspector General.

■ 4. Subpart G–2 is revised to read as follows:

**Subpart G–2—Office of Professional Responsibility**

Sec.
0.39    Office of Professional Responsibility.
0.39a    Functions.
0.39b    Confidentiality of information.
0.39c    Relationship to other departmental units.

**Subpart G–2—Office of Professional Responsibility**

**§ 0.39  Office of Professional Responsibility.**

The Office of Professional Responsibility (DOJ–OPR) shall be headed by a Counsel, who shall be appointed by the Attorney General and subject to the general supervision and direction of the Attorney General or, whenever appropriate, the Deputy Attorney General.

**§ 0.39a  Functions.**

(a) The Counsel shall:

(1) Receive, review, investigate and refer for appropriate action allegations of misconduct involving Department attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when such allegations are related to allegations of attorney misconduct within the jurisdiction of DOJ–OPR;

(2) Receive, review, investigate and refer for appropriate action;

(i) Any allegation of reprisal against an employee or applicant who discloses information pursuant to paragraph (a)(1) of this section; and

(ii) Allegations of reprisal taken against any Federal Bureau of Investigation employee for disclosing information pursuant to 28 CFR 27.1;

(3) Report to the responsible Department official the results of inquiries and investigations arising under paragraphs (a)(1) and (2) of this section, and, when appropriate, make recommendations for disciplinary and other corrective action;

(4) Refer any allegation not arising under paragraphs (a)(1) or (2) of this section to the Inspector General or another appropriate Department official;

(5) Notify any person who has made allegations pursuant to paragraphs (a)(1) or (2) of this section and any person who was the subject of such allegations of the completion and, as appropriate, the results of, any inquiry or investigation undertaken, where such notification is permitted by law and consistent with the law enforcement interests of the Department;

(6) Engage in liaison with the bar disciplinary authorities of the states, territories, and the District of Columbia with respect to professional misconduct matters;

(7) Submit an annual report to the Attorney General summarizing the work of the Office;

(8) Submit recommendations to the Attorney General and the Deputy Attorney General on the need for changes in policies and procedures that become evident during the course of the Counsel's inquiries and investigations;

(9) Review proposals from Department employees to refer to appropriate licensing authorities apparent professional misconduct by attorneys outside the Department, and make such referrals where warranted, except that referrals made pursuant to 8 CFR 1003.106(d) do not require the Counsel's review; and

(10) Perform any other responsibilities assigned by the Attorney General or the Deputy Attorney General.

(b) For the purpose of paragraph (a)(2)(i) of this section, any disclosure by an employee or applicant to a supervisor, Professional Responsibility Officer, the Office of Professional Responsibility, the Office of the Inspector General, the Executive Office for United States Attorneys, or other appropriate individual or component shall constitute disclosure to the Attorney General or the Counsel.

**§ 0.39b  Confidentiality of information.**

The Counsel shall not disclose the identity of any person submitting an allegation of misconduct or reprisal pursuant to 28 CFR 0.39a(a)(1) or (2) unless the person consents to the disclosure of his identity or the disclosure is necessary to carry out the authority of the Office of Professional Responsibility, including conducting an investigation or referring the allegation to another component.

**§ 0.39c  Relationship to other departmental units.**

(a) Primary responsibility for assuring the maintenance of the highest standards of professional responsibility by Department employees rests with the heads of the offices, divisions, bureaus, and boards of the Department.

(b) The heads of the offices, divisions, bureaus, and boards shall assure that any judicial finding of misconduct or serious judicial criticism relating to the duties described in § 0.39(a)(1), or any nonfrivolous allegation of serious misconduct concerning an employee in their component and relating to those duties, is reported to the Counsel.

(c) The heads of the offices, divisions, bureaus, and boards shall provide information and assistance requested by the Counsel in connection with any inquiries or investigations conducted by the Counsel or by the Counsel's staff. As set forth in part 45, all Department personnel, including the subject(s) of any inquiry or investigation, shall cooperate fully with any investigation conducted by the Counsel or his designee.

**PART 45—EMPLOYEE RESPONSIBILITIES**

■ 5. The authority citation for part 45 is revised to read as follows:

**Authority:** 5 U.S.C. 301, 7301, App. 3, 6; 18 U.S.C. 207; 28 U.S.C. 503, 528; DOJ Order 1735.1.

■ 6. Part 45 is amended by adding new §§ 45.11, 45.12, and 45.13, to read as follows:

**§ 45.11  Reporting to the Office of the Inspector General.**

Department of Justice employees have a duty to, and shall, report to the Department of Justice Office of the Inspector General, or to their supervisor or their component's internal affairs office for referral to the Office of the Inspector General:

(a) Any allegation of waste, fraud, or abuse in a Department program or activity;

(b) Any allegation of criminal or serious administrative misconduct on

the part of a Department employee (except those allegations of misconduct that are required to be reported to the Department of Justice Office of Professional Responsibility pursuant to § 45.12); and

(c) Any investigation of allegations of criminal misconduct against any Department employee.

### § 45.12  Reporting to the Department of Justice Office of Professional Responsibility.

Department employees have a duty to, and shall, report to the Department of Justice Office of Professional Responsibility (DOJ–OPR), or to their supervisor, or their component's internal affairs office for referral to DOJ–OPR, any allegations of misconduct by a Department attorney that relate to the exercise of the attorney's authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when such allegations are related to allegations of attorney misconduct within the jurisdiction of DOJ–OPR.

### § 45.13  Duty to cooperate in an official investigation.

Department employees have a duty to, and shall, cooperate fully with the Office of the Inspector General and Office of Professional Responsibility, and shall respond to questions posed during the course of an investigation upon being informed that their statement will not be used to incriminate them in a criminal proceeding. Refusal to cooperate could lead to disciplinary action.

Dated: September 11, 2006.

**Alberto R. Gonzales,**

*Attorney General.*

[FR Doc. E6–15315 Filed 9–14–06; 8:45 am]

**BILLING CODE 4410–BD–P**

---

## PENSION BENEFIT GUARANTY CORPORATION

### 29 CFR Parts 4022 and 4044

### Benefits Payable in Terminated Single-Employer Plans; Allocation of Assets in Single-Employer Plans; Interest Assumptions for Valuing and Paying Benefits

**AGENCY:** Pension Benefit Guaranty Corporation.

**ACTION:** Final rule.

**SUMMARY:** The Pension Benefit Guaranty Corporation's regulations on Benefits Payable in Terminated Single-Employer Plans and Allocation of Assets in

Single-Employer Plans prescribe interest assumptions for valuing and paying benefits under terminating single-employer plans. This final rule amends the regulations to adopt interest assumptions for plans with valuation dates in October 2006. Interest assumptions are also published on the PBGC's Web site (*http://www.pbgc.gov*).

**DATES:** Effective October 1, 2006.

**FOR FURTHER INFORMATION CONTACT:** Catherine B. Klion, Manager, Regulatory and Policy Division, Legislative and Regulatory Department, Pension Benefit Guaranty Corporation, 1200 K Street, NW., Washington, DC 20005, 202–326–4024. (TTY/TDD users may call the Federal relay service toll-free at 1–800–877–8339 and ask to be connected to 202–326–4024.)

**SUPPLEMENTARY INFORMATION:** The PBGC's regulations prescribe actuarial assumptions—including interest assumptions—for valuing and paying plan benefits of terminating single-employer plans covered by title IV of the Employee Retirement Income Security Act of 1974. The interest assumptions are intended to reflect current conditions in the financial and annuity markets.

Three sets of interest assumptions are prescribed: (1) A set for the valuation of benefits for allocation purposes under section 4044 (found in Appendix B to part 4044), (2) a set for the PBGC to use to determine whether a benefit is payable as a lump sum and to determine lump-sum amounts to be paid by the PBGC (found in Appendix B to part 4022), and (3) a set for private-sector pension practitioners to refer to if they wish to use lump-sum interest rates determined using the PBGC's historical methodology (found in Appendix C to part 4022).

This amendment (1) adds to Appendix B to part 4044 the interest assumptions for valuing benefits for allocation purposes in plans with valuation dates during October 2006, (2) adds to Appendix B to part 4022 the interest assumptions for the PBGC to use for its own lump-sum payments in plans with valuation dates during October 2006, and (3) adds to Appendix C to part 4022 the interest assumptions for private-sector pension practitioners to refer to if they wish to use lump-sum interest rates determined using the PBGC's historical methodology for valuation dates during October 2006.

For valuation of benefits for allocation purposes, the interest assumptions that the PBGC will use (set forth in Appendix B to part 4044) will be 6.00 percent for the first 20 years following the valuation date and 4.75 percent

thereafter. These interest assumptions represent a decrease (from those in effect for September 2006) of 0.20 percent for the first 20 years following the valuation date and are otherwise unchanged. These interest assumptions reflect the PBGC's recently updated mortality assumptions, which are effective for terminations on or after January 1, 2006. See the PBGC's final rule published December 2, 2005 (70 FR 72205), which is available at *http://www.pbgc.gov/docs/05–23554.pdf*. Because the updated mortality assumptions reflect improvements in mortality, these interest assumptions are higher than they would have been using the old mortality assumptions.

The interest assumptions that the PBGC will use for its own lump-sum payments (set forth in Appendix B to part 4022) will be 3.00 percent for the period during which a benefit is in pay status and 4.00 percent during any years preceding the benefit's placement in pay status. These interest assumptions represent a decrease (from those in effect for September 2006) of 0.25 percent in the immediate annuity rate and are otherwise unchanged. For private-sector payments, the interest assumptions (set forth in Appendix C to part 4022) will be the same as those used by the PBGC for determining and paying lump sums (set forth in Appendix B to part 4022).

The PBGC has determined that notice and public comment on this amendment are impracticable and contrary to the public interest. This finding is based on the need to determine and issue new interest assumptions promptly so that the assumptions can reflect current market conditions as accurately as possible.

Because of the need to provide immediate guidance for the valuation and payment of benefits in plans with valuation dates during October 2006, the PBGC finds that good cause exists for making the assumptions set forth in this amendment effective less than 30 days after publication.

The PBGC has determined that this action is not a "significant regulatory action" under the criteria set forth in Executive Order 12866.

Because no general notice of proposed rulemaking is required for this amendment, the Regulatory Flexibility Act of 1980 does not apply. See 5 U.S.C. 601(2).

### List of Subjects

*29 CFR Part 4022*

Employee benefit plans, Pension insurance, Pensions, Reporting and recordkeeping requirements.

```
[Federal Register: September 15, 2006 (Volume 71, Number 179)]
[Rules and Regulations]
[Page 54412-54415]
From the Federal Register Online via GPO Access [wais.access.gpo.gov]
[DOCID:fr15se06-7]
```

=======================================================================
-----------------------------------------------------------------------

DEPARTMENT OF JUSTICE

28 CFR Parts 0 and 45

[AG Order No. 2835-2006]


Reporting Violations to the Office of the Inspector General and
the Office of Professional Responsibility; Delegations of Authority

AGENCY: Department of Justice.

ACTION: Final rule.

-----------------------------------------------------------------------

SUMMARY: This final rule amends the regulations of the Department of
Justice to codify the obligation to report misconduct to the Office of
the Inspector General (OIG) and the Department of Justice Office of
Professional Responsibility (OPR), to reflect the conferral of
statutory law enforcement authority on OIG special agents, to update
the structure, functions, and responsibilities of OPR, and to reflect
the current organizational structure of the OIG.

DATES: Effective Date: September 11, 2006.

FOR FURTHER INFORMATION CONTACT: Mary Anne Hoopes, Associate Counsel,
Office of Professional Responsibility, United States Department of
Justice, Washington, DC 20530 (202) 514-3365 (regarding matters related
to OPR), or Gail A. Robinson, General Counsel, Office of the Inspector
General, United States Department of Justice, Washington, DC 20530
(202) 616-0646 (regarding matters related to the OIG).

SUPPLEMENTARY INFORMATION: 1. This rule amends 28 CFR part 0 to clarify
the delegation of authority by the Attorney General to the Counsel for
Professional Responsibility and to codify authority of the Inspector
General. This rule permits OPR and the OIG to investigate specific
matters, make such recommendations as appropriate to the Deputy
Attorney General and the Attorney General, and coordinate their
activities to improve the professionalism of the Department and to
reduce waste, fraud, and abuse.
    2. This rule amends 28 CFR part 45 by adding three new sections.
The rule codifies the Attorney General's April 12, 2002 Memorandum For
Department of Justice Employees Regarding the Duty to Report Misconduct
and Cooperate with Investigators. This Memorandum provides for
notifying the OIG of fraud, waste, abuse, or misconduct, except for
those matters in the jurisdiction of OPR. This rule is not a
substantive change, but merely codifies existing practice. The rule
also implements section 308 of the Department of Justice Appropriations
Authorization Act for FY 2002 and 2003, Public Law 107-273 (Nov. 2,
2002), which amended 5 U.S.C. app. 3, 8E, and which provides in

pertinent part:

The Attorney General shall ensure by regulation that any
component of the Department of Justice receiving a nonfrivolous
allegation of criminal wrongdoing or administrative misconduct by an
employee of the Department of Justice, except with respect to
allegations described in subsection (b)(3) [matters within the
investigative jurisdiction of the Department of Justice Office of
Professional Responsibility], shall report that information to the
Inspector General.

This rule is also a codification of preexisting principles as set
forth in the United States Attorneys' Manual, Sec. 1-4.100, Standards
of Conduct Allegations of Misconduct by Department of Justice Employees
Reporting Misconduct Allegations. Although the language of section 308
of P.L. 107-273 is not identical to the prior regulations on this
subject, the Attorney General interprets the statutory language as
intended to codify the prior and existing practice.
3. This rule revises the description of OPR to reflect the changes
made in that Office's jurisdiction since its creation on December 9,
1975, including AG Order 833-79 (45 FR 27754-55, April 24, 1980); AG
Order 1931-94 (November 8, 1994), AG Order 2167-98 (63 FR 35847, July
8, 1998), AG Order 2190-98 (63 FR 62937-01, November 10, 1998), and AG
Order 2492-2001 (66 FR 37902-01, July 20, 2001).
As originally constituted, OPR's jurisdiction was extraordinarily
broad. OPR was empowered to ``[r]eceive and review any information or
allegation concerning conduct by a Department employee that may be in
violation of law, regulations or orders, or of applicable standards of
conduct or may constitute mismanagement, gross waste of funds, abuse of
authority, or a substantial and specific danger to public health or
safety.'' 28 CFR 0.39a(a). Its role in investigating those allegations,
however, was relatively narrow, in keeping with its small size. OPR was
to ``[m]ake such preliminary inquiry as may be necessary to determine
whether the matter should be referred to another official within the
Department,'' 28 CFR 0.39a(c), and then to make an appropriate referral
either to the head of the Department of Justice component to which the
employee was assigned, or to that component's internal inspection unit,
if no violation of law was alleged, or to the appropriate investigative
agency, if the conduct appeared to involve a violation of law, 28 CFR
0.39a(d)(1) and (2). OPR then received reports from the investigating
component on the status and outcome of investigations referred by OPR.
28 CFR 0.39a(e)(1). If OPR deemed it inappropriate to refer an
allegation to the employing component, it was to refer the matter to
the Attorney General and the Deputy Attorney General, or, if that would
be inappropriate, to the Associate Attorney General or the Solicitor
General. 28 CFR 0.39a(d)(3). In that event, OPR was to ``recommend what
further action should be undertaken'' with respect to the allegation,
``including the assignment of any task force or individual to undertake
the action recommended.'' 28 CFR 0.39a(g). Finally, under 28 CFR
0.39a(h), OPR was authorized to

[[Page 54413]]

``[u]ndertake any investigation of a matter referred under paragraph
(d)(3) of this section that may be assigned by the Attorney General,
the Deputy Attorney General, the Associate Attorney General, or the
Solicitor General, or cooperate with any other organization, task
force, or individual that may be assigned by such official to undertake
the investigation.'' 28 CFR 0.39a(h). Consistent with the Attorney
General's authority to assign functions within the Department, the

regulations provided that OPR was also authorized to ``[u]ndertake any other responsibilities assigned by the Attorney General including duties relating to the improvement of the performance of the Department.'' 28 CFR 0.39a(k).

Following the creation of the OIG in 1989, the role of OPR was focused specifically on addressing allegations of misconduct by Department attorneys and law enforcement personnel, accomplished through direct investigation by OPR or by OPR's oversight of the Offices of Professional Responsibility of the Federal Bureau of Investigation (FBI) and the Drug Enforcement Administration (DEA). In 2001, general oversight of those offices was transferred to the OIG, while OPR was charged with investigating allegations of misconduct involving Department attorneys that relate to the exercise of their authority to investigate, litigate, or provide legal advice, as well as allegations of misconduct by law enforcement personnel when they are related to allegations of attorney misconduct within the jurisdiction of OPR.

The Department believes that it is appropriate to update the organizational language within 28 CFR part 0 at this time to reflect more accurately the delegations of authority and investigative assignments made by statute and the Attorney General. Although the organic provisions of 28 CFR part 0 do not create substantive or procedural rights as a general proposition, clarity of understanding of the organization of, and responsibilities within, the Department benefits the public in general. In this instance, the Department is clarifying the internal investigative functions of OPR.

4. This rule also amends 28 CFR part 0 to reflect the conferral of statutory law enforcement authority on OIG special agents. The Department's organizational regulations, 28 CFR 0.29j, authorized OIG special agents to perform law enforcement functions as Special Deputy United States Marshals. Section 812 of the Homeland Security Act, Pub. L. 107-296, Sec.  812, 116 Stat. 2135, 2222 (Nov. 25, 2002), amending section 6(e) of the Inspector General Act of 1978, provided that the Attorney General may, through the adoption of guidelines, authorize Special Agents under the direction of an Assistant Inspector General for Investigations to exercise the following law enforcement powers:

(A) To carry a firearm while engaged in official duties or as expressly authorized by the Attorney General;

(B) to make arrests, while engaged in official duties or as expressly authorized by the Attorney General, (i) for federal offenses committed in the officer's presence, or

(ii) for any federal felony if the agent has reasonable grounds to believe that the person has committed or is committing such felony; and

(C) to seek and execute federal arrest and search warrants issued upon probable cause.

As provided for in this section, the Attorney General adopted the Attorney General Guidelines for Offices of Inspector General with Statutory Law Enforcement Authority (``Attorney General Guidelines'' or ``Guidelines'') on December 8, 2003, authorizing and governing the exercise of these authorities for Inspector General offices of the Departments and agencies specified in section 6(e)(3) of the Inspector General Act, as amended. These Guidelines are applicable to Inspectors General under section 6(e) of the Inspector General Act, as amended, and Special Agents under their authority, and apply operational guidelines and policies of the Department of Justice in the performance of criminal law enforcement investigations, e.g., the Attorney General's Guidelines on General Crimes, Racketeering Enterprise, and Terrorism Enterprise Investigations; the Attorney General's Guidelines Regarding the Use of Confidential Informants; and the Attorney General's Memorandum on Procedures for Lawful, Warrantless Monitoring

of Verbal Communications, as amended and updated, and any other Attorney General guidelines applicable to criminal investigative practices. The Attorney General Guidelines and these operational guidelines are subject to change.

In view of the promulgation of the Attorney General Guidelines, the Department is making conforming amendments to the existing regulations governing the Department's OIG, in order to reflect the provisions of section 6(e) and the issuance of the Attorney General's Guidelines.

5. This rule also amends 28 CFR 0.29(a) to reflect the current organizational structure of the OIG.

Regulatory Matters

This rule was not published for public comment and takes effect immediately because it pertains to matters of internal agency management. See 5 U.S.C. 553(b) and (d). In accordance with 5 U.S.C. 605(b), the Attorney General certifies that this rule does not have a significant adverse economic impact on a substantial number of small entities and does not have an effect beyond the internal operating procedures of the Department.

This rule is not considered to be a ``rule'' within the meaning of section 3(d) of Executive Order 12866, nor does this rule have federalism implications warranting the preparation of a federalism assessment in accordance with section 6 of Executive Order 12612. This rule is not a ``rule'' within the meaning of the Congressional Review Act, 5 U.S.C. 801 et seq.

List of Subjects

28 CFR Part 0

Government employees, Delegations of authority.

28 CFR Part 45

Government employees, Ethics.

0
Accordingly, by virtue of the authority vested in me as Attorney General, including 5 U.S.C. 301 and 28 U.S.C. 509, 510, Part 0 and Part 45 of title 28 of the Code of Federal Regulations are amended as follows:

PART 0--ORGANIZATION OF THE DEPARTMENT OF JUSTICE

0
1. The authority citation for part 0 continues to read as follows:

Authority: 5 U.S.C. 302; 28 U.S.C. 509, 510, 515-519.

0
2. Paragraph (a) of Sec.  0.29 is revised to read as follows:

Sec.  0.29  Organization.

(a) The Office of the Inspector General consists of an immediate office, which is composed of the Inspector General, the Deputy Inspector General, and the Office of the General Counsel, and five

major divisions, each headed by an Assistant Inspector General. The
five OIG divisions are: Audit; Investigations; Evaluation and
Inspections; Oversight and Review; and Management and Planning.
* * * * *

0
3. Section 0.29j is revised to read as follows:


Sec.  0.29j  Law enforcement authority.

     Subject to guidelines promulgated by the Attorney General, Special
Agents of

[[Page 54414]]

the Office of the Inspector General are authorized to:
     (a) Detect and assist in the prosecution of crimes in violation of
the laws of the United States and to conduct such other investigations
regarding matters that are within the jurisdiction of the Inspector
General;
     (b) Serve legal writs, summons, complaints, and subpoenas issued by
the Inspector General or by a Federal grand jury;
     (c) Receive, transport, and provide safekeeping of arrestees and
other persons in the custody of the Attorney General or detained
aliens;
     (d) Arrest without warrant any person for an offense against the
United States committed in the presence of the Special Agent or whom
the Special Agent has reasonable grounds to believe has committed or is
committing a felony cognizable under the laws of the United States;
     (e) Seek and execute search and arrest warrants;
     (f) Carry firearms while on-duty; and
     (g) Carry firearms while off-duty as authorized by the Inspector
General.


0
4. Subpart G-2 is revised to read as follows:
Subpart G-2--Office of Professional Responsibility
Sec.
0.39 Office of Professional Responsibility.
0.39a Functions.
0.39b Confidentiality of information.
0.39c Relationship to other departmental units.

Subpart G-2--Office of Professional Responsibility


Sec.  0.39  Office of Professional Responsibility.

     The Office of Professional Responsibility (DOJ-OPR) shall be headed
by a Counsel, who shall be appointed by the Attorney General and
subject to the general supervision and direction of the Attorney
General or, whenever appropriate, the Deputy Attorney General.


Sec.  0.39a  Functions.

     (a) The Counsel shall:
     (1) Receive, review, investigate and refer for appropriate action
allegations of misconduct involving Department attorneys that relate to

the exercise of their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when such allegations are related to allegations of attorney misconduct within the jurisdiction of DOJ-OPR;

(2) Receive, review, investigate and refer for appropriate action;

(i) Any allegation of reprisal against an employee or applicant who discloses information pursuant to paragraph (a)(1) of this section; and

(ii) Allegations of reprisal taken against any Federal Bureau of Investigation employee for disclosing information pursuant to 28 CFR 27.1;

(3) Report to the responsible Department official the results of inquiries and investigations arising under paragraphs (a)(1) and (2) of this section, and, when appropriate, make recommendations for disciplinary and other corrective action;

(4) Refer any allegation not arising under paragraphs (a)(1) or (2) of this section to the Inspector General or another appropriate Department official;

(5) Notify any person who has made allegations pursuant to paragraphs (a)(1) or (2) of this section and any person who was the subject of such allegations of the completion and, as appropriate, the results of, any inquiry or investigation undertaken, where such notification is permitted by law and consistent with the law enforcement interests of the Department;

(6) Engage in liaison with the bar disciplinary authorities of the states, territories, and the District of Columbia with respect to professional misconduct matters;

(7) Submit an annual report to the Attorney General summarizing the work of the Office;

(8) Submit recommendations to the Attorney General and the Deputy Attorney General on the need for changes in policies and procedures that become evident during the course of the Counsel's inquiries and investigations;

(9) Review proposals from Department employees to refer to appropriate licensing authorities apparent professional misconduct by attorneys outside the Department, and make such referrals where warranted, except that referrals made pursuant to 8 CFR 1003.106(d) do not require the Counsel's review; and

(10) Perform any other responsibilities assigned by the Attorney General or the Deputy Attorney General.

(b) For the purpose of paragraph (a)(2)(i) of this section, any disclosure by an employee or applicant to a supervisor, Professional Responsibility Officer, the Office of Professional Responsibility, the Office of the Inspector General, the Executive Office for United States Attorneys, or other appropriate individual or component shall constitute disclosure to the Attorney General or the Counsel.


Sec.  0.39b  Confidentiality of information.

The Counsel shall not disclose the identity of any person submitting an allegation of misconduct or reprisal pursuant to 28 CFR 0.39a(a)(1) or (2) unless the person consents to the disclosure of his identity or the disclosure is necessary to carry out the authority of the Office of Professional Responsibility, including conducting an investigation or referring the allegation to another component.


Sec.  0.39c  Relationship to other departmental units.

(a) Primary responsibility for assuring the maintenance of the

highest standards of professional responsibility by Department
employees rests with the heads of the offices, divisions, bureaus, and
boards of the Department.
    (b) The heads of the offices, divisions, bureaus, and boards shall
assure that any judicial finding of misconduct or serious judicial
criticism relating to the duties described in Sec.  0.39(a)(1), or any
nonfrivolous allegation of serious misconduct concerning an employee in
their component and relating to those duties, is reported to the
Counsel.
    (c) The heads of the offices, divisions, bureaus, and boards shall
provide information and assistance requested by the Counsel in
connection with any inquiries or investigations conducted by the
Counsel or by the Counsel's staff. As set forth in part 45, all
Department personnel, including the subject(s) of any inquiry or
investigation, shall cooperate fully with any investigation conducted
by the Counsel or his designee.

PART 45--EMPLOYEE RESPONSIBILITIES

0
5. The authority citation for part 45 is revised to read as follows:

    Authority: 5 U.S.C. 301, 7301, App. 3, 6; 18 U.S.C. 207; 28
U.S.C. 503, 528; DOJ Order 1735.1.


0
6. Part 45 is amended by adding new Sec. Sec.  45.11, 45.12, and 45.13,
to read as follows:


Sec.  45.11  Reporting to the Office of the Inspector General.

    Department of Justice employees have a duty to, and shall, report
to the Department of Justice Office of the Inspector General, or to
their supervisor or their component's internal affairs office for
referral to the Office of the Inspector General:
    (a) Any allegation of waste, fraud, or abuse in a Department
program or activity;
    (b) Any allegation of criminal or serious administrative misconduct
on

[[Page 54415]]

the part of a Department employee (except those allegations of
misconduct that are required to be reported to the Department of
Justice Office of Professional Responsibility pursuant to Sec.  45.12);
and
    (c) Any investigation of allegations of criminal misconduct against
any Department employee.


Sec.  45.12  Reporting to the Department of Justice Office of
Professional Responsibility.

    Department employees have a duty to, and shall, report to the
Department of Justice Office of Professional Responsibility (DOJ-OPR),
or to their supervisor, or their component's internal affairs office
for referral to DOJ-OPR, any allegations of misconduct by a Department
attorney that relate to the exercise of the attorney's authority to

investigate, litigate or provide legal advice, as well as allegations
of misconduct by law enforcement personnel when such allegations are
related to allegations of attorney misconduct within the jurisdiction
of DOJ-OPR.


Sec.  45.13  Duty to cooperate in an official investigation.

     Department employees have a duty to, and shall, cooperate fully
with the Office of the Inspector General and Office of Professional
Responsibility, and shall respond to questions posed during the course
of an investigation upon being informed that their statement will not
be used to incriminate them in a criminal proceeding. Refusal to
cooperate could lead to disciplinary action.

     Dated: September 11, 2006.
Alberto R. Gonzales,
Attorney General.
[FR Doc. E6-15315 Filed 9-14-06; 8:45 am]

BILLING CODE 4410-BD-P

EXHIBIT 2



SEARCH

OFFICE OF PROFESSIONAL
RESPONSIBILITY

**OPR PROCESS**

**HOW TO FILE A COMPLAINT**

**OPR ANNUAL REPORTS**

**OTHER OPR DOCUMENTS**

**OPR FOIA**

**DOJ HOME**

**OPR Process**

OPR receives reports of allegations of misconduct made against Department of Justice attorneys from many sources. Nearly half of all such allegations are reported to OPR either by the attorney involved or by other Department sources. The remaining complaints received by OPR come from a variety of sources, including private attorneys, defendants and civil litigants, other federal agencies, state or local government officials, judicial and congressional referrals, and media reports. Judicial findings of misconduct are given expedited attention by OPR.

Upon receipt, OPR reviews each allegation and determines whether further investigation is warranted. The determination whether to open an investigation in a specific case is a matter of investigative judgment. Many factors are weighed, including the nature of the allegation, its apparent credibility, its specificity, its susceptibility to verification, and the source of the allegation. A decision to open a matter does not give rise to a presumption of misconduct nor does it shift the burden of proof to the person being investigated. OPR's investigations involve a wide range of allegations, and the investigative methods used vary accordingly.

In many cases, OPR notifies the attorney against whom the allegation has been made and requests a written response. OPR may also conduct on-site investigations. Based on the results of the investigation, OPR prepares a report to the component head concerned with a copy to the Office of the Deputy Attorney General setting forth its findings and conclusions, and advises the complainant and the attorney involved of the conclusion reached.

- **How to File a Complaint**

Contact Us  |  Accessibility  |  FOIA  |  Archive  |  For DOJ Employees  |  Site Map  |  Privacy Policy
No FEAR Act  |  USA.gov  |  Other Government Resources

**EXHIBIT 3**



# U.S. Department of Justice
## Office of Professional Responsibility
### Policies and Procedures

## 1.    History of the Office of Professional Responsibility

The Department of Justice Office of Professional Responsibility (OPR) was created in 1975 as one response to the revelations of ethical abuses and misconduct by Department of Justice officials in the Watergate scandal. Pursuant to 28 C.F.R. § 0.39a, OPR reports directly to the Attorney General and Deputy Attorney General. The Office is headed by a Counsel and Deputy Counsel, and is staffed by Associate Counsel and Assistant Counsel.

## 2.    The Role and Authority of OPR

OPR has jurisdiction to investigate allegations of misconduct involving Department attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice, as well as allegations of misconduct by law enforcement personnel when they are related to allegations of attorney misconduct within the jurisdiction of OPR. [1] Other allegations of misconduct by Department attorneys that do not fall within the jurisdiction of OPR are investigated by the Office of the Inspector General (OIG).[2] OIG is required to notify OPR of the existence and results of any OIG investigation that reflects upon the professional ethics, competence or integrity of a Department attorney. In such cases, OPR is directed to take appropriate action.

In addition to reporting its findings and conclusions in individual investigations, OPR is also charged with providing advice to the Attorney General and Deputy Attorney General concerning the need for changes in policies and procedures which become evident during the course of OPR's investigations.

## 3.    Allegations that Must be Reported to OPR

Chapter 1-4.100 of the United States Attorneys' Manual (USAM), entitled "Allegations of Misconduct by Department of Justice Employees - Reporting Misconduct Allegations," provides that:

- All Department employees must report to their United States Attorney, Assistant Attorney General, or other appropriate supervisor any evidence or non-frivolous allegation of misconduct. An employee who wishes to report directly to OPR or OIG may do so.

- The supervisor must evaluate whether the misconduct at issue is serious. If so, the supervisor must report it to OPR or OIG, as appropriate. If the supervisor is uncertain, he or she may contact OPR or OIG to determine what action to take. If the supervisor was involved in the alleged misconduct, she or he must bring it to the attention of a higher ranking official.

- Any statement by a judge or magistrate indicating a belief that a Department attorney has engaged in misconduct, or taking under submission a claim of misconduct, must be reported to a supervisor. The supervisor must report to OPR immediately any evidence or non-frivolous

allegation of serious misconduct.

- Judicial findings of attorney misconduct and judicial requests for an inquiry into possible misconduct must immediately be reported to OPR and the attorney's supervisor, regardless of whether the matter is regarded as frivolous or non-serious. Judicial findings of misconduct are, except in extraordinary cases, expeditiously investigated by OPR, without awaiting further judicial or appellate proceedings.

## 4.    Receipt and Initial Review of Allegations of Misconduct

OPR receives allegations against Department attorneys from a variety of sources, including self-referrals and referrals of complaints by officials in U.S. Attorneys' offices and litigating divisions, private attorneys, defendants and civil litigants, other federal agencies, state or local government officials, judicial and congressional referrals, and media reports. OPR also conducts periodic searches of legal databases to identify opinions containing judicial findings of misconduct.

Information provided to OPR may be confidential. In appropriate cases, OPR will disclose that information only to the extent necessary in order to resolve the allegation.

Upon receipt, OPR reviews each allegation and determines whether further investigation is warranted. The determination whether to conduct an inquiry and/or full investigation in a specific case is a matter of investigative judgment. Many factors are weighed, including the nature of the allegation, its apparent credibility, its specificity, its susceptibility to verification, and the source of the allegation. OPR ordinarily completes investigations relating to the actions of attorneys who have resigned or retired in order to better assess the litigation impact of the alleged misconduct and to permit the Attorney General and Deputy Attorney General to judge the need for changes in Department policies or practices.

A decision to conduct an inquiry or full investigation in a matter does not give rise to a presumption of professional misconduct nor does it shift the burden of proof to the person being investigated.

## 5.    Judicial Findings of Misconduct and Allegations in the Course of Litigation

Judicial findings of misconduct are, except in extraordinary cases, expeditiously investigated by OPR regardless of any planned appeal. Depending on the circumstances, magistrate judges' recommendations may result in an inquiry prior to review by the District Court. Oral statements by judges are not usually considered "findings" resulting in an automatic OPR investigation, but should be reported to the U.S. Attorney or appropriate supervisor for a determination of whether an OPR referral is required.

If an allegation of misconduct made during the course of litigation is not summarily denied or overruled by the court, it must be brought to the supervisor's attention. If the supervisor determines that the allegation is non-frivolous and would constitute serious misconduct if true, it must be reported to OPR.

## 6.    The Investigative Process in a Typical Matter

OPR's investigations involve a wide range of allegations, and the investigative methods used vary accordingly. The vast majority of complaints received by OPR each year are reviewed and determined not to warrant investigation because, for example, the complaint is frivolous on its face, it is vague and

unsupported by any evidence, or it is not within OPR's jurisdiction. If OPR closes a matter without investigation this fact is recorded in OPR's files, and the attorney alleged to have engaged in misconduct receives no notice of the complaint.

In some cases, OPR determines that further information is needed to resolve the matter. The first step is usually to request a written response from the attorney involved in the allegation. Requests for responses to allegations should be answered promptly and thoroughly. Supporting documentation and any other relevant material should be included with the response, and other individuals with relevant information should be identified. However, in order to avoid any appearance of attempting to coordinate accounts, the attorney involved should not interview other witnesses or ask them to prepare written statements. The response should not be edited or revised by any other Department attorney or official. If an attorney's trial schedule or other professional commitments preclude a response within the period requested, an extension of time may be arranged by contacting OPR.

In requesting a written response, OPR asks the attorney involved to provide pertinent information regarding his or her professional background and experience including his length of service and positions held with the Department. In order to determine what state bar rules may apply to the matter, OPR also asks the attorney involved to list each jurisdiction in which he or she maintains bar membership, regardless of his category of membership (e.g., active, inactive, associate, or some other membership category). In addition, OPR asks if the allegation has been reported in the public media, and if so, that copies of any such stories or broadcasts be provided to OPR. This information is necessary in order to determine, when the matter is concluded, whether preparation of a public summary is appropriate (see 12, below).

In the case of a self-referral or referral by a supervisor, it is not necessary to await OPR's request before sending explanatory material. A written response to an allegation may be sent in anticipation of OPR's request -- either at the time the allegation is reported to OPR, or as soon thereafter as it can be prepared.

In cases that cannot be resolved based on the written response and relevant documents, OPR conducts a full on-site investigation. Case files, investigative files, or other relevant documents may be reviewed. Interviews of witnesses with information relevant to the matter are conducted. Interviews are ordinarily conducted by two OPR attorneys. The complainant is usually interviewed first. Witnesses identified by the complainant and by OPR may be interviewed next. An employee being interviewed may take notes but may not tape record the interview. If OPR determines that it would be in the interest of the investigation, a witness interview may be recorded or transcribed by a court reporter. In that event, a copy of the recording or transcript is ordinarily not made available to the witness.

All Department employees have an obligation to cooperate with OPR investigations, and to give information that is complete and candid. Employees who refuse to cooperate with OPR investigations may be subject to formal discipline, including removal. See Attorney General's Memo of April 12, 2002, "Duty to Report Misconduct and Cooperate with Investigators."

## 7. Interview of the Person Alleged to have Committed Misconduct

In cases in which OPR determines that on-site interviews are necessary, OPR ordinarily interviews the attorney alleged to have engaged in misconduct at or near the end of its investigation, when the allegations have been fully developed. Most investigations are administrative in nature; in the instances in which the allegations involve criminal conduct, the attorney is so advised. In such cases, the subjects are not required to participate in an investigation unless they are informed that their statements will not be used to incriminate them in any criminal proceeding.

An attorney alleged to have engaged in misconduct is interviewed alone unless counsel is permitted to attend (see below). At OPR's discretion in the interest of the investigation, the attorney may be sworn pursuant to 5 U.S.C. § 303. The interview is ordinarily transcribed by a court reporter. At the conclusion of the interview, the attorney will be given an opportunity, subject to a confidentiality agreement, to review the transcript and to provide a supplemental written response and additional documents relevant to the investigation. The confidentiality agreement requires return of the transcript and any copies together with any supplemental materials and the agreement will become an attachment to the transcript.

In the interview, the attorney alleged to have committed misconduct will be asked to address each of the outstanding issues and allegations. He or she may suggest witnesses to be interviewed, but such interviews are discretionary with OPR. Ordinarily, OPR does not disclose who has already been interviewed or whom it plans to interview.

## 8.   Assistance of Counsel

If the matter involves alleged illegality, the attorney alleged to have committed misconduct is entitled to have counsel present to assist him or her. In the majority of investigations, however, the allegations are administrative in nature, and employees are not entitled to counsel as a matter of law. However, counsel may be permitted if OPR is satisfied that counsel will not interfere with or delay the interview. Counsel must be actually retained by the employee as his or her legal representative, not attending informally or as an observer. Coworkers are not permitted to attend as observers.

## 9.   Post-investigation Procedures

At the conclusion of the investigation, OPR makes findings of fact and reaches conclusions as to whether professional misconduct has occurred. OPR may find professional misconduct in two types of circumstances: (1) where an attorney **intentionally** violated an obligation or standard imposed by law, applicable rule of professional conduct, or Department regulation or policy, or (2) where an attorney acted in **reckless disregard** of his or her obligation to comply with that obligation or standard. OPR may also find that the attorney used poor judgment or made a mistake; such findings do not constitute findings of professional misconduct.

If OPR determines that no misconduct or poor judgment occurred, the attorney who was investigated, the complainant, and other appropriate parties are notified of that result.

If OPR determines that professional misconduct or poor judgment occurred, it prepares a report containing its findings and conclusions, and provides that report to the Deputy Attorney General as well as the appropriate Assistant Attorney General, the Director of EOUSA, or other appropriate component head. In addition, if OPR finds professional misconduct, it will also recommend an appropriate range of disciplinary actions for consideration by the attorney's supervisors (see further discussion below). In cases of poor judgment, the attorney's supervisors may consider training, reassignment, or disciplinary action.

OPR may include in its report information relating to management and policy issues noted in the course of the investigation for consideration by Department officials.

## 10.   Formal Disciplinary Action Based on OPR Findings

While OPR recommends an appropriate range of discipline in cases of professional misconduct, the decision whether to propose discipline and the nature of the action to be taken rests with the attorney's

supervisors. Disciplinary actions against DOJ attorneys are governed by the DOJ Human Resources Order, chapter 1200, and include written reprimand, suspension, demotion, or removal. If a proposed disciplinary action is based on material included in an OPR report, that material must be disclosed to the attorney. Otherwise, the attorney involved in the allegation does not have a right to review the entire OPR report, which often contains confidential information regarding other employees or findings regarding management issues noted during the investigation.

## 11. Referral of Findings of Professional Misconduct to Bar Disciplinary Authorities

In cases in which it finds professional misconduct (either intentional misconduct or conduct in reckless disregard of an applicable standard or obligation), OPR ordinarily advises bar disciplinary authorities in the jurisdiction where the attorney is licensed of its finding. Such a referral is not made if OPR determines that the matter involves purely federal or Department concerns and no bar disciplinary rule appears to be implicated. OPR's investigative information may be disseminated to assist state bar disciplinary authorities to meet their responsibilities. 63 Fed. Reg. 68299 (12/10/98).

## 12. Public Disclosure of OPR Findings

OPR's findings in certain cases may be publicly disclosed. The Department will disclose the final disposition, after all available administrative reviews have been completed, of any matter in the following categories:

a.  A finding of intentional or knowing professional misconduct in the course of litigation or investigation where the Attorney General or Deputy Attorney General finds that the public interest in disclosure outweighs the privacy interest of the attorney and any law enforcement interests;

b.  Any case involving an allegation of serious professional misconduct where there has been a demonstration of public interest, including referrals by a court or bar association, where the Attorney General or Deputy Attorney General finds that the public interest in disclosure outweighs the privacy interest of the attorney and any law enforcement interests;

c.  Any case in which the attorney requests disclosure, where law enforcement interests are not compromised by the disclosure.

If a matter appears to meet these criteria, OPR prepares a summary of the matter including the attorney's name, sufficient facts to explain the context of the allegation, and the final disposition. This summary is submitted to the Department's Office of Information and Privacy ("OIP"), which determines whether the Privacy Act permits disclosure of the included information and whether revisions should be made to the summary prior to disclosure. If OIP advises that the statement is appropriate for disclosure, the summary is sent to the attorney and the appropriate supervisory official, and both are given the opportunity to make written comments and objections to the proposed disclosure on grounds of privacy or law enforcement concerns. Any such objections are reviewed by OIP.

OPR forwards the proposed summary to the Deputy Attorney General with its recommendation regarding release and attaches all comments that were received. The final decision as to whether to release a summary is made by the Attorney General. If the Attorney General decides that disclosure is appropriate, the summary is forwarded to the Office of Public Affairs for release.

## 13. Routine Uses of OPR's Investigative Information

In addition to the internal uses by Department officials described above and disclosures to state bar disciplinary authorities, OPR information may be disseminated for the routine uses published in their entirety at 63 Fed. Reg. 68299 (12/10/98), and amended at 67 Fed. Reg. 70967 (11/27/02) and 69 Fed. Reg. 21160 (4/20/04). These uses include disclosures to other government agencies and officials for law enforcement purposes; to individuals or agencies in order to elicit information relevant to the investigation or another pending proceeding; in court, grand jury, regulatory or administrative proceedings; to other federal agencies when requested in connection with the hiring or retention of an employee, the issuance of a security clearance, or the reporting of an investigation of an employee; to complainants to the extent necessary to inform them of the progress or results of OPR's review of their complaints; and to the subject of an investigation or inquiry conducted by OPR to further the investigation or inquiry, or to give notice of the status or outcome of the matter.

## 14. OPR Review of Proposals to Refer Non-DOJ Attorneys to Bar Disciplinary Authorities

Prior to reporting to the bar any alleged unethical conduct by an attorney not employed by the Department of Justice, a DOJ attorney must discuss the matter with the U.S. Attorney or other component head, who in turn should consult with OPR about the matter. In appropriate cases, it may be desirable for such a complaint to be referred to the bar by OPR rather than by an attorney in the component in which the dispute arose.

---

[1] OPR's authority and jurisdiction derive from the Attorney General's authority under 5 U.S.C. § 301, 28 U.S.C. §§ 509-510, 28 C.F.R. § 0.39, Attorney General Order 1931-94, and USAM § 1-4.100, et seq. For clarity, this outline describes OPR's policies and procedures as they apply to Department attorneys. The same policies and procedures generally apply to investigators and law enforcement personnel.

[2] See 5 U.S.C. Appendix 3, § 8E (b)(3).

Office of Professional Responsibility
March 7, 2006

*Updated page March 15, 2006*
*usdoj/jmd/egov/ked*

**EXHIBIT 4**



## U.S. Department of Justice
## Office of Professional Responsibility
### Analytical Framework

### A.    Introduction

In general, after investigating an allegation of misconduct made against a Department of Justice attorney, OPR determines, based on all the facts found, whether the attorney committed professional misconduct in the exercise of his or her authority to investigate, litigate or provide legal advice. If OPR concludes that an attorney did not commit professional misconduct, OPR determines whether the attorney exercised poor judgment, engaged in other inappropriate conduct, made a mistake, or acted appropriately under all the circumstances.

In making these determinations in the majority of cases, OPR is guided by a general analytical framework described here.[1] Other modes of analysis may be used in investigations of allegations of misconduct by law enforcement personnel that are related to allegations of misconduct by Department attorneys, or in investigations of matters not otherwise within OPR's general jurisdiction that are assigned to this Office by the Attorney General or Deputy Attorney General. Additionally, because allegations of professional misconduct are inherently fact-specific and varied in nature, it is impossible to foresee every possible type of allegation of professional misconduct that may be made against a Department attorney. Thus, alternative modes of analysis may be required in particular cases.

### B.    Professional Misconduct

#### 1.    Definition

A Department attorney engages in professional misconduct when he or she intentionally violates or acts in reckless disregard of an obligation or standard imposed by law, applicable rule of professional conduct, or Department regulation or policy. The elements essential to a conclusion that an attorney committed professional misconduct, then, are that the attorney (1)

---

[1]This document is intended to provide guidance concerning OPR's analytical framework. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, relating to OPR's investigations, its findings and conclusions, or any action taken as a result of them. This document places no limitation on OPR's exercise of its authority and jurisdiction as determined by federal regulation and Attorney General order.

violated or disregarded an applicable obligation or standard (2) with the requisite scienter. A violation or disregard of an obligation or standard does not necessarily constitute professional misconduct if, under the circumstances, it is de minimis.

### 2.    Obligation or Standard

Department attorneys are subject in the performance of their professional duties to obligations and standards imposed by law, by applicable rules of professional conduct, and by Department regulations and policies, the violation or disregard of which could implicate an attorney's professionalism. There are many sources of such obligations and standards, including the Constitution (e.g. the protections afforded by the Fourth, Fifth and Sixth Amendments that a prosecutor must respect), federal statutes (e.g. Jencks Act disclosure requirements), case law (e.g. court opinions interpreting the Due Process Clause as prohibiting vindictive prosecution), court orders (e.g. a District Court's order on a motion in limine), rules of procedure (e.g. requirements in the Federal Rules of Civil Procedure and a District Court's rules governing civil discovery), standards of conduct imposed by an attorney's licensing authority or by the jurisdiction in which the attorney is litigating (e.g. state rules of professional conduct mandating candor to a tribunal), regulations issued by the Department and codified in the Code of Federal Regulations (e.g. the regulation concerning subpoenas to members of the news media), regulations codified in the Code of Federal Regulations and applicable to Department employees as well as other Executive Branch employees (e.g. the prohibition on the use of an employee's public office for private gain), and Department policies contained in the United States Attorney's Manual (e.g. the requirements imposed on prosecutors by the Principles of Federal Prosecution, which are published in the Manual).

In a given situation, then, a Department attorney's conduct may be governed by a number of obligations and standards from a variety of sources. It is the attorney's professional duty to attempt in good faith to ascertain the obligations and standards imposed on him or her and to comply with them. An attorney who fails to do so and who violates or disregards an obligation or standard, with scienter, commits professional misconduct.

### 3.    Intent

An attorney intentionally violates an obligation or standard when he or she (1) engages in conduct with the purpose of obtaining a result that the obligation or standard unambiguously prohibits, or (2) engages in conduct knowing its natural or probable consequence and that consequence is a result that the obligation or standard unambiguously prohibits. Intentional professional misconduct, then, includes both conduct that is purposeful and conduct that is knowing. The attorney's conduct includes the actions the attorney takes and fails to take.

Although an attorney may deny intent, either by denying an improper purpose or by denying knowledge of the natural or probable consequences of his or her conduct, OPR's finding whether the conduct was intentional is made using the same preponderance of the evidence standard OPR uses in making other factual findings. Evidence of intent can include, but is not limited to, the circumstances surrounding the attorney's conduct, statements the attorney made,

and other, related conduct in which the attorney engaged. When an attorney denies intent, OPR evaluates and notes in its report, in appropriate circumstances, the attorney's credibility in making the denial, and explains in the report why the attorney was found credible or not in the denial.

### 4.    Reckless Disregard

An attorney acts in reckless disregard of an obligation or standard when (1) the attorney knows, or should know based on his or her experience and the unambiguous nature of the obligation or standard, of an obligation or standard, (2) the attorney knows, or should know based on his or her experience and the unambiguous applicability of the obligation or standard, that the attorney's conduct involves a substantial likelihood that he or she will violate or cause a violation of the obligation or standard, and (3) the attorney nonetheless engages in the conduct, which is objectively unreasonable under all the circumstances. Thus, an attorney's disregard of an obligation or standard is reckless when, considering the nature and purpose of the attorney's conduct and the facts known to the attorney, it represents a gross deviation from the standard of conduct that an objectively reasonable attorney would observe in the same situation.

An attorney who makes a good faith attempt to ascertain the obligations and standards imposed on the attorney and to comply with them in a given situation does not commit professional misconduct. Evidence that an attorney made a good faith attempt to ascertain and comply with the obligations and standards imposed can include, but is not limited to, the fact that the attorney reviewed materials that define or discuss one or more potentially applicable obligations and standards, consulted with a supervisor or ethics advisor, notified the tribunal or the attorney representing a party or person with adverse interests of an intended course of conduct, or took affirmative steps the attorney reasonably believed were required to comply with an obligation or standard.

### C.    Conclusions Other Than Professional Misconduct

If OPR concludes that an attorney did not commit professional misconduct, OPR determines whether the attorney exercised poor judgment, engaged in other inappropriate conduct, made a mistake, or acted appropriately under all the circumstances. If OPR determines that an attorney's conduct was inappropriate, it articulates in its report why the attorney's conduct did not rise to the level of professional misconduct.

The Department has a justifiable expectation that its attorneys will use good judgment in carrying out their professional duties and in exercising the broad discretion the Department has provided them to do so. An attorney exercises poor judgment when, faced with alternative courses of action, he or she chooses a course of action that is in marked contrast to the action that the Department may reasonably expect an attorney exercising good judgment to take. Poor judgment differs from professional misconduct in that an attorney may act inappropriately and thus exhibit poor judgment even though he or she may not have violated or acted in reckless disregard of a clear obligation or standard. In addition, an attorney may exhibit poor judgment even though an obligation or standard at issue is not sufficiently clear and unambiguous to

support a professional misconduct finding. For example, an attorney exercises poor judgment when, confronted with an obviously problematic set of circumstances, the attorney fails to seek advice or guidance from his or her supervisors even though an attorney exercising good judgment would do so.

When OPR concludes that an attorney demonstrated poor judgment in a matter it has investigated, it refers this conclusion to the responsible management official for consideration. A referral is a notification by OPR that management should consider and take appropriate steps to follow up on a report's conclusion about a particular attorney. After OPR makes a referral, management officials advise OPR of what steps they take to follow up on the report's conclusion. A referral is not made if an attorney engaged in inappropriate conduct not amounting to professional misconduct or poor judgment or simply made a mistake.

A mistake results from excusable human error despite an attorney's exercise of reasonable care under the circumstances. Whether an attorney's error is excusable depends upon factors including: the attorney's opportunity to plan, and to reflect upon the possible and foreseeable consequences of, a course of conduct; the breadth and magnitude of the responsibilities borne by the attorney; the importance of the conduct in light of the attorney's overall responsibilities and actions; and the extent to which the error is representative of the attorney's usual conduct. Examples of mistakes OPR has noted in prior reports include poor choice of words in unplanned remarks, misunderstanding the facts despite a reasonable attempt to inform oneself, and misunderstanding the law despite a reasonable attempt to research, interpret and apply it. Mistake differs from poor judgment in that an attorney makes a mistake as a result of excusable human error despite choosing an appropriate course of action.

When OPR does not conclude an attorney committed professional misconduct, demonstrated poor judgment, or made a mistake, OPR's report specifies whether or not the attorney's conduct was found to be appropriate under all the circumstances. Although a referral is not made, clarifying whether an attorney's conduct was appropriate in a matter identifies potential problems for management and helps to uphold the standards of appropriate conduct all Department attorneys should strive to meet. Potential problems OPR has noted in prior reports as inappropriate conduct that did not, under the circumstances of those particular cases, rise to the level of professional misconduct, demonstrate poor judgment or constitute a mistake include poor communication between attorneys, mismanagement of witnesses and poor organization of files.

In its report on an investigation, OPR can identify for review and consideration by Department officials any issues relating to Department policies, practices and procedures or to possible management deficiencies raised in the investigation. OPR can also identify for review and consideration by an office's managers possible systemic problems found in the office during OPR's investigation.

Revised 7/6/05

**EXHIBIT 5**

US Attorneys > USAM > Title 1
prev | next | Organization and Functions Manual

# 1-4.000
# STANDARDS OF CONDUCT

1-4.100 Allegations of Misconduct by Department of Justice Employees -- Reporting Misconduct Allegations
1-4.120 Reporting Allegations in the Course of Judicial Proceedings
1-4.130 Litigation Concerning Misconduct Allegations
1-4.140 Office of Professional Responsibility Procedures
1-4.200 Public Financial Disclosure Reports
1-4.220 Confidential Financial Disclosure Reports
1-4.300 DOJ Employee Participation in Outside Activities Termination Agreements/Contingency Fees
1-4.320 Outside Activities Generally
1-4.330 Teaching, Speaking, and Writing
1-4.340 Civic Organizations, Professional Boards and Committees, and State Grievance Committees
1-4.350 Pro Bono Work
1-4.400 Political Activity (the Hatch Act)
1-4.410 Restrictions on all Employees
1-4.420 Restrictions on Career SES, Criminal Division, and FBI Employees, and all Political Appointees
1-4.430 Permissible Activities
1-4.440 Political Referrals
1-4.500 Gifts Received From Foreign Governments
1-4.600 Post-Government Employment Restrictions
1-4.610 Permanent Prohibition Applicable to all Employees
1-4.620 Two-Year Restriction for Supervisors
1-4.630 One-Year "Cooling-Off" Period
1-4.640 Sanctions
1-4.650 Other Restrictions on Post-Employment Activities
1-4.660 Restrictions on Seeking Employment Outside the Government

## 1-4.010 Introduction

Under Executive Order 11222, each agency of the federal government is responsible for issuing regulations on the standards of conduct, including ethical conduct, for its employees. It is required that these standards be brought to the attention of each employee annually. The Department follows the government-wide standards of conduct promulgated by the Office of Government Ethics (OGE) at 5 C.F.R. Chapter XVI, especially Parts 2634, 2635, 2636, and 2637; and Department of Justice Order 1200.1. In addition, there are supplemental regulations for the Department of Justice which address, among other things, outside employment. *See* 5 C.F.R. § 3801.101-106. Every current employee should be reminded annually of the existence of the standards of conduct contained in 5 C.F.R. Chapter XVI and DOJ Order 1735.1A, and where to review a copy. All employees should review these standards

carefully and bring any problems to the attention of their supervisors. Also, all employees are subject to the provisions of 18 U.S.C. § 201 et seq., making criminal certain activities by employees or former employees.

Any questions concerning the applicability of 5 C.F.R. § 2634 et seq., DOJ Order 1735.1A, the statutes upon which these regulations are based (see discussion below), or any other applicable professional standards should be addressed to the Ethics Advisors in the Districts. For example, an employee should contact his/her Ethics Advisor when he/she: (1) is offered a gift in connection with his/her job, including, in certain cases, from another employee, and especially when the offer involves an award, the payment of money, travel and/or lodging expenses, or free attendance at any event; (2) is assigned a matter where his/her official actions may affect his/her financial interest or the interest of any person with whom he/she is seeking or negotiating for future employment; (3) is asked to participate in a matter that might cause a reasonable person to question his/her impartiality; (4) might realize private gain through the use of his/her official position, non-public information, government property, and/or official time; or (5) pursues outside employment or other outside activity that may conflict with his/her official duties.

The Deputy Designated Agency Ethics Official (DDAEO) for the offices of the United States Attorneys and the Executive Office for United States Attorneys (EOUSA) is the Legal Counsel, EOUSA. Unless otherwise indicated in this chapter, "employee" means an employee of EOUSA or a United States Attorney's Office. The DDAEO is authorized to review requests to engage in outside activities employment or other matters which might appear inappropriate or improper under the various applicable standards of conduct. In many cases, employees should, and in some cases, must (*see, e.g.*, USAM 1-4.320), seek approval from the DDAEO before engaging in certain outside activities. Although the role of the DDAEO is to determine whether the activity violates any of the various standards of conduct mentioned in this chapter, the DDAEO will also consider, based on the representations of the requestor, whether engaging in the activity would cause a reasonable person with knowledge of the relevant facts to question the employees impartiality. Approvals are based solely on the information provided by the employee, and may be invalid if the employee provided incorrect or incomplete information.

Disciplinary action for violating a provision of 5 C.F.R. Part 2635 or any agency supplemental regulations will not be taken against an employee who has engaged in conduct in good faith reliance upon the advice of an agency ethics official, provided that the employee made full disclosure of all relevant circumstances. Reliance on any other individual, such as a private attorney, will not shield an employee from discipline. Further, when the employee's conduct violates a criminal statute, reliance on the advice of the DDAEO cannot ensure that the employee will not be prosecuted. Such reliance is, however, a factor considered by the Department in selection of such cases for prosecution.

## 1-4.100 Allegations of Misconduct by Department of Justice Employees -- Reporting Misconduct Allegations

Department employees shall report to their United States Attorney or Assistant Attorney General, or other appropriate supervisor, any evidence or non-frivolous allegation of misconduct that may be in violation of any law, rule, regulation, order, or applicable professional standard. The supervisor shall evaluate whether the misconduct at issue is serious, and if so shall report the evidence or non-frivolous allegation to the Office of Professional Responsibility (OPR) or to the Office of the Inspector General (OIG), and to EOUSA, as set forth below.

If the supervisor was involved in the alleged violation, the supervisor must bring the evidence or

allegation to the attention of a higher-ranking official. An employee who wishes to report directly to OPR or OIG may do so.

When a supervisor is uncertain whether an allegation should be referred, the supervisor may telephone OPR or OIG to determine what action to take.

Reporting an allegation raises no inference that the allegation is well-founded.

All employees have a duty to cooperate with internal investigations conducted by OPR, OIG or another internal agency official.

A. **Office of Professional Responsibility of the Department of Justice.** Evidence and non-frivolous allegations of serious misconduct by Department attorneys that relate to the exercise of their authority to investigate, litigate, or provide legal advice shall be reported to OPR.

B. **Offices of Professional Responsibility of the Federal Bureau of Investigation and the Drug Enforcement Administration.** Evidence and non-frivolous allegations of serious misconduct by FBI or DEA employees shall be reported to the Office of Professional Responsibility of the FBI or DEA. Employees of the FBI or DEA who wish to report an allegation outside of their component may report to the Deputy Attorney General.

C. **Office of the Inspector General.** Evidence and non-frivolous allegations of waste, fraud, abuse or other misconduct by and Department employee, except as set forth an (A) and (B) above shall be reported to OIG.

D. **Executive Office for United States Attorneys.** Any evidence or non-frivolous allegation involving an employee of a United States Attorney's office or EOUSA shall also be reported to the Legal Counsel, EOUSA.

## 1-4.120 Reporting Allegations in the Course of Judicial Proceedings

A. **Judicial Statements Concerning Misconduct.** Department attorneys shall report to their supervisors any statement by a judge or magistrate indicating a belief that misconduct by a Department employee has occurred, or taking under submission a claim of misconduct. Supervisors shall report to DOJ OPR immediately any evidence or non-frivolous allegation of serious misconduct.

B. **Judicial Findings of Misconduct and Requests for Review.** Whenever a judge or magistrate makes a finding of misconduct by a Department employee or requests an inquiry by the Department into possible misconduct, the finding or request shall be reported immediately to the employee's supervisor and to DOJ OPR, regardless whether the matter is regarded as serious or non-serious.

## 1-4.130 Litigation Concerning Misconduct Allegations

A. **Supervisory Review of Court Filings.** Before any pleading or other document concerning any non-frivolous allegation of serious misconduct is filed, whether in the district court or on appeal, it must be reviewed by a supervisor who is not implicated by the allegation.

B. **Recusal Upon Finding of Misconduct.** A Department attorney who is found to have engaged in

misconduct shall not represent the United States in litigation concerning the misconduct finding, unless approval is obtained from the responsible United States Attorney or Assistant Attorney General.

C. **Consultation with DOJ OPR.** The supervisor may consult with DOJ OPR before filing any pleading relating to a misconduct allegation, and must apprise DOJ OPR of any significant developments after a matter has been reported to DOJ OPR pursuant to this section.

## 1-4.140 Office of Professional Responsibility Procedures

A. **Preliminary Review.** Upon receiving an allegation within its jurisdiction, DOJ OPR shall conduct an immediate preliminary review. DOJ OPR shall open an investigation only if it concludes that further investigation is warranted.

B. **Review of Judicial Findings.** If a judge makes a finding of misconduct by a Department employee or requests an inquiry by the Department into possible misconduct, DOJ OPR shall conduct an expedited inquiry without awaiting further judicial or appellate proceedings.

C. **Notification at Conclusion of Investigation.** Upon the completion of an investigation, DOJ OPR shall promptly notify the subject of the allegation, the employee's supervisor, and the complainant of the results.

D. **Bad Faith Complaints.** If DOJ OPR determines that an allegation made by an attorney was made in bad faith, as a result of gross negligence, or in reckless disregard for the truth, it shall report the complainant's misconduct to the appropriate entity established by the local authorities to handle attorney misconduct.

E. **Former Employees.** DOJ OPR shall obtain the approval of the Deputy Attorney General Before declining to investigate or terminate an investigation on the ground that an employee has left the Department. The decision whether to conduct an investigation under such circumstances will be made on a case-by-case basis.

F. **Public Disclosure of OPR Findings.** DOJ OPR will determine whether to publish a summary of one of its reports in accordance with a memorandum to OPR from the Deputy Attorney General dated December 13, 1993. For a copy, please contact the Legal Counsel staff at 202-514-4024.

## 1-4.200 Public Financial Disclosure Reports

The Ethics in Government Act of 1978, as amended (the "Act"), requires the filing of a Public Financial Disclosure Report (SF-278) by employees in statutorily-specified positions. In general, these positions require the exercise of significant policy-making and command discretion. In each agency the following employees, including Special Government employees, serve in "covered" positions:

A. Employees in senior positions under a pay system other than the General Schedule must file when their positions' rate of basic pay is equivalent to or greater than 120% of the minimum rate of basic pay for GS-15. *See* 5 C.F.R § 2634.202(c). Currently, the minimum rate of basic pay for GS-15 is $83,160. Assistant United States Attorneys who are in paid supervisory positions or serving as a Senior Litigation Counsel and Special Government Employees are required to file.

B. Employees who serve in positions classified above GS-15 under the General Schedule. Senior

Executive Service Employees are required to file.

C.  Uniformed officers paid at or above pay grade 0-7.

D.  Schedule C and other civilian employees, regardless of pay grade, whose positions are excepted from the competitive service because of their confidential or policy-making character.

E.  Each agency's primary Designated Agency Ethics Official, regardless of pay grade. Other ethics officials need file only if they are in another specified category.

F.  Presidential nominees requiring Senate confirmation. All United States Attorneys are required to file.

G.  All administrative law judges.

A covered employee must file a "new entrant report" within 30 days after assuming a covered position. Reports must be filed each May 15th for the preceding calendar year, and within 30 days after leaving his or her covered position for the period between the last annual report and the date employment is terminated. 5 C.F.R §§ 2634.201 and 202. Reports are not required from employees who serve less than 60 days. 5 C.F.R. § 2634.204. Anyone who files a Public Financial Disclosure Report more than 30 days after its due date, including any extensions which have been granted, shall pay a late filing fee of $200. 5 C.F.R. § 2634.704.

The Attorney General may bring a civil action against any person who does not file, files a false report, or fails to report required information. Employees who file a false report may also be prosecuted. 5 C.F.R. § 2634.701.

This report may be disclosed upon request to any requesting person pursuant to 5 C.F.R. § 2634.603.

## 1-4.220 Confidential Financial Disclosure Reports

The Ethics in Government Act of 1978, as amended, requires the filing of a Confidential Financial Disclosure Report (OGE Form 450) by all special government employees, serving with or without compensation, including those who serve on federal advisory committees, who are not serving as a representative of an industry or another entity or who are not already Federal employees and who are not already required to file a public financial disclosure report. The Act also requires the filing of confidential financial disclosure reports by employees who occupy a position classified at GS-15 or below of the General Schedule, or whose basic rate of pay is less than 120% of the minimum rate of basic pay for GS-15 of the General Schedule, or employees in any other position determined by the designated agency ethics official to be of equal classification; if:

A.  Their duties and responsibilities require them to participate personally and substantially through decision or the exercise of significant judgement in taking a government action regarding:

  o  contracting or procurement;
  o  administering or monitoring a grant;
  o  regulating or auditing any non-federal entity;
  o  other activities in which the final decision or action will have a direct and substantial economic effect on the interests of any non-federal entity; or

B. The duties and responsibilities of the employee's position require the employee to file such a report to avoid involvement in a real or apparent conflict of interest, and to carry out the purposes behind any statute, Executive Order, rule, or regulation applicable to or administered by that employee.

Within EOUSA and the United States Attorneys' offices the following employees are required to file:

- Assistant United States Attorneys (line AUSAs) (currently, instead of filing an OGE Form 450, AUSAs are using an alternative method approved by the Office of Government Ethics. The chosen alternative method is the use of a "Conflict of Interest Certification" which requires all affected Assistants to certify that no conflict of interest exists in each matter they undertake);
- Special government employees (which includes special AUSAs);
- All Administrative Officers and employees with procurement/and or contracting authority, and
- Employees involved in reviewing grant applications. (Example: "Weed and Seed" grant matters).

Those employees who currently file the public financial disclosure report will not be required to file the confidential report. *See* 5 C.F.R. § 2634.904.

An employee may be excluded from filing if the duties of the position make remote the possibility of a conflict, if the duties involve such a low level of responsibility because there is a substantial degree of supervision and review; or the effect of any conflict on the integrity of the government would be insubstantial, or an alternative procedure is used. *See* 5 C.F.R. § 2634.905(c). An employee must file a new entrant report within 30 days after assuming a covered position and annually by October 31st. Employees who are expected to work 60 days or less need not file. Employees are not required to file a termination report upon leaving their covered positions. 5 C.F.R. § 2634.903.

The Attorney General may bring a civil action against any person who does not file, files a false report, or fails to report required information. Employees who file a false report may also be prosecuted. 5 C.F.R. § 2634.701.

The primary use of the information on this form is to determine compliance with applicable Federal conflict of interest laws and regulations.

Effective June 10, 1994, United States Attorneys were redelegated the authority to act as Deputy Designated Agency Ethics Officials for the review and certification of Confidential Financial Disclosure Reports filed by reporting individuals within their districts. If they have any questions with respect to this authority, they should contact the Legal Counsel, EOUSA.

## 1-4.300 DOJ Employee Participation in Outside Activities -- Termination Agreements/Contingency Fees

Upon entering on duty, Department attorneys must, in general, withdraw from all cases they are currently handling. Interests in pending matters, such as contingency fees, should be addressed as part of the termination of their private practice. Experience indicates that "cashing out" the sometimes speculative nature of these interests has created problems for incoming employees. In negotiating a termination agreement with a former firm or business associates, an employee should be aware that

federal criminal law prohibits Federal employees from participating in any matter, in their official capacity, in which they have a financial interest. 18 U.S.C. § 208, 5 C.F.R. § 2635.401. Federal law also prohibits Federal employees, other than in the proper discharge of their official duties, from representing anyone before a Federal agency or court in connection with a matter in which the United States is a party or has an interest. 18 U.S.C. § 205. In addition, please be mindful of 18 U.S.C. § 209 which prohibits an employee from receiving a salary from any source other than the United States as compensation for his/her services.

In light of the above statutes, the Department has never permitted incoming employees to retain any interest in matters pending before Federal departments (or agencies) or in which the United States is a party or has an interest. If the litigation does not involve the United States and the immediate "cashing out" will create an undue financial burden on an employee or the law firm, the Department has, on limited occasions, permitted the retention of a contingent interest. If, after exhausting all possible avenues for "cashing out" an interest, an employee is unable to do so, he/she should contact the EOUSA Legal Counsel's office regarding the disclosure of contingency fees. The number of interests which an employee may retain must be kept to an absolute minimum and the financial interest must be reduced to a sum certain or a fixed percentage. It should be noted that while these matters are pending, an employee must be disqualified from handling any mater involving the attorney and the law firm(s) handling the referred matter.

## 1-4.320 Outside Activities Generally

Employees may not engage in outside activities, including employment, that conflict with their official duties. An activity conflicts with an employee's official duties if it would require him to disqualify himself from matters so critical that his ability to perform his official duties would be impaired. 5 C.F.R. § 2635.802. Employees are cautioned that even if an outside activity or employment is not prohibited under this regulation or by statute, it may violate other principles or standards set forth in 5 C.F.R. § 2635 et seq, or laws concerning other issues, such as those restricting certain political activities. See USAM 1-4.400.

A. **Use of Title.** With rare exceptions, employees engage in outside activities in their private rather than official capacities. Therefore, when engaging in outside activities in their private capacity, employees may not indicate or represent in any way that they are acting on behalf of the Department, or that they are acting in their official capacity. Thus, an employee may not use office letterhead, agency or office business cards, or other material or equipment that would disclose the employee's official title or position if they engage in an outside activity in their private capacity. The incidental identification of an employee's position or office is not prohibited, but if this information is incidentally released it becomes the responsibility of the employee to advise all individuals concerned that he or she is acting in his or her individual capacity and not as a representative of the Department. See 5 C.F.R. § 2635.807(b).

B. **Use of Official Time or Excused Absence.** With limited exceptions with respect to pro bono, community service, bar activities and uncompensated law-related teaching (see USAM 1-4.350), employees engaging in outside activities do so on their own time. See the DOJ Organization and Functions Manual at 30.

C. **Use of Office Resources.** As a general rule, employees may use government property only for official business or as authorized by the government. 5 C.F.R. §§ 2635.101(b)(9), 2635.704(a). However, employees are allowed to use equipment, for non-official purposes, which involves only negligible expense, such as electricity, ink, small amounts of paper, and ordinary wear and tear. In

addition, they are allowed limited use of telephones and faxes for local calls, or if they are charged to non-government accounts. Employees may also make limited use of their computers to access the internet for non-official purposes. Finally, use of library equipment at negligible expense is also permitted. 5 C.F.R. § 3801.105. This policy does not authorize the use of commercial electronic databases when there is an extra cost to the government. It also does not override statutes, rules or regulations governing the use of specific types of government property, such as electronic mail, and 41 C.F.R. (FPMR) § 201-21.601 (governing the ordinary use of long-distance telephone services.)

D. **Clerical Support.** Under no circumstances may employees require others, including support staff, to provide assistance with respect to outside activities. Care should be taken in requesting their assistance on their own time even for compensation, since subordinates may believe that their really have no choice but to say yes. It is especially coercive to ask them to volunteer their outside time without compensation, but if support staff on their own volunteer to support a pro bono or other voluntary service outside activity, their offer may be accepted.

E. **Approval Requirements.** Employees must obtain prior written approval from the EOUSA Legal Counsel for outside employment which involves: (1) the outside practice of law; or (2) a subject matter, policy, or program that is in his or her component's area of responsibility. The EOUSA Legal Counsel can approve requests to engage in the outside practice of law only when it is uncompensated and in the nature of community service, or when the employee will be representing himself, his parents, his children or his spouse. If an employee desires to practice law for compensation, he must obtain approval from the Deputy Attorney General through the EOUSA. United States Attorneys and their Assistants should freely consult with EOUSA on these matters. *See* the DOJ Organization and Functions Manual at 29.

F. **Conflicts of Interest.** Employees may not engage in outside activities that create or appear to create a conflict of interest with their official duties. Such a conflict exists when the outside activity would: (1) require the recusal of the employee from significant aspects of his or her official duties (5 C.F.R. § 2635.802(b)); (2) create an appearance that the employee's official duties were performed in a biased or less than impartial manner (5 C.F.R. § 2635.502); or (3) create an appearance of official sanction or endorsement (5 C.F.R. § 2635.702(b)).

With limited exceptions, outside activities may not include the representation of third parties before the federal government. 18 U.S.C. § 205.

All employees are prohibited by statute from providing legal assistance -- with or without compensation -- in any case in which the United States is a party or has a direct and substantial interest. 18 U.S.C. §§ 203, 205.

All employees are prohibited from providing any outside professional services in criminal or habeas corpus matters in any court, whether with or without compensation.

## 1-4.330 Teaching, Speaking, and Writing

Employees who wish to undertake teaching or speaking engagements or who wish to write for publication are directed to consult 5 C.F.R. § 2635.807 which details the circumstances upon which compensation may be received and the extent to which an employee's title may be used. They should also consult with their United States Attorney. Employees should be cautious to avoid any conflict of interest with their position and to ensure that no interference with the performance of their official duties

occurs. In some instances they may need to use a disclaimer. Assistant United States Attorneys must generally take annual leave or leave without pay for any time required for engaging in these activities during normal business hours. At the discretion of the United States Attorney, Assistants may receive administrative leave for uncompensated law-related teaching. *See* the DOJ Organization and Functions Manual at 30. It is highly advisable for employees to discuss these issues with the Ethics Advisor in their District before undertaking a teaching or lecturing assignment.

## 1-4.340 Civic Organizations, Professional Boards and Committees, and State Grievance Committees

While certain activities can be easily undertaken without creating problems, service on national and local bar committees, state and municipal commissions, corporate boards of directors, arbitration panels, state grievance committees, and similar organizations, with or without remuneration, could have the potential for creating a conflict of interest or an appearance of a conflict of interest. Employees should contact the EOUSA Legal Counsel's office whenever questions arise and should seek prior approval before serving in a leadership position in a bar association. Membership in certain boards of directors has been exempted from the prior approval requirement. *See* the DOJ Organization and Functions Manual at 29. United States Attorneys' involvement in crime prevention efforts is addressed in the DOJ publication entitled "Legal and Ethical Issues Surrounding United States Attorneys' Involvement in Crime Prevention Efforts" issued October 1994, which can be obtained from the EOUSA Office of Legal Counsel.

## 1-4.350 Pro Bono Work

Executive Order 12988, Section 2, provides that "All Federal agencies should develop appropriate programs to encourage and facilitate pro bono legal and other volunteer service by government employees to be performed on their own time, including attorneys, as permitted by statute, regulation or other rule or guideline." On March 8, 1996, the Attorney General signed the Department of Justice Policy Statement on Pro Bono Legal and Volunteer Services. This statement summarized existing Department of Justice policies and rules on issues such as leave, conflict of interest, and use of property. It also encourages all employees to set a voluntary personal goal of at least 50 hours per year of pro bono legal and non-legal volunteer service. The Department does not restrict the type of pro bono activities in which employees engage, provided that such activities do not violate any statutory or regulatory restrictions, and provided also that they genuinely are in the public interest. Such activities include, but are not limited to, the provision of legal service to:

- Persons of limited means or other disadvantaged persons;
- Charitable, religious, civic, community, governmental, health and educational organizations in matters which are designed primarily to address the needs of persons of limited means or other disadvantaged persons, or to further their organization purpose;
- Individuals, groups or organizations seeking to secure or protect civil rights, civil liberties or public rights; or
- Activities for improving the law, the legal system, or the legal profession.

Similarly, with respect to other volunteer activities besides pro bono legal work, the Department does not seek to restrict the type of activity as long as it does not violate statutory or regulatory restrictions. All such activities, like any other outside activities, are subject to limitations, including compliance with all conflict of interest statutes and regulations, and compliance with all local unauthorized practice of law statutes and fee requirements. *See* USAM 1-4.320(F).

The approval requirements for pro bono and volunteer service are the same as for any other outside activities. *See* USAM 1-4.010 and 1-4.320E. Since pro bono work by definition is the uncompensated outside practice of law, approval must be sought, but the DDAEO has the authority to approve such requests, as opposed to the outside practice of law for compensation, which only the Deputy Attorney General can approve. In some circumstances it may be possible for the uncompensated outside practice of law to be pre-approved. This could occur in connection with certain legal services or bar association programs. If a district is interested in participating in such a program, it should contact the Legal Counsel, EOUSA, to have the program reviewed. If appropriate, participation in the program will be approved by the Director, EOUSA.

With respect to volunteer or community services other than pro bono legal work, approval may have to be obtained from the DDAEO, depending on the nature of the service, and in any case it is advisable for the employee to seek approval. *See* USAM 1-4.320. Some types of volunteer work have been pre-approved. See Memorandum of March 15, 1996, from Director, EOUSA, to all employees.

Department employees are encouraged to participate in pro bono and volunteer activities outside their regular working hours. Such excused absences should be limited to those situations in which the employee's volunteer/community service meets one or more of the following criteria: is at least indirectly related to the Department's mission; is officially sponsored or sanctioned by the Attorney General; or will enhance the professional development or skills of the employee in his or her current position. The Attorney General encourages employees to participate in the Department-sponsored mentoring programs and volunteer activities that further the Department's program priorities. For example, the strong leadership skills of many Department employees could be put to good use helping at-risk youth in classrooms, youth clubs, shelters, and midnight basketball programs. EOUSA's LECC/Victim Witness Staff has a Volunteer Services Program Coordinator who may be contacted for information about such programs. Limitations on the use of an employee's title or position and on the use of office equipment or personnel are the same as for any outside activity. *See* USAM 1-4.320A-D.

For additional information about performing pro bono and volunteer/community services, see the DOJ Organization and Functions Manual at 29-30.

## 1-4.400 Political Activity (the Hatch Act)

On February 3, 1994, the Hatch Act Reform Amendments of 1993 became effective. These Amendments made significant changes to 5 U.S.C. §§ 7321 - 7326, where the Hatch Act and its amendments are codified. Generally, the Amendments removed many restrictions on the participation of government employees in political activities. On September 23, 1994, the United States Office of Personnel Management published its regulations implementing the Amendments in the Federal Register. They are codified at 5 C.F.R. §§ 733.101 through 734.702. On October 11, 1994, the Attorney General issued a memorandum concerning restrictions on the political activities of Department of Justice employees. She exercised her authority to impose on political appointees, including non-career SES and Schedule C employees, restrictions similar to those imposed on all employees prior to the 1993 Amendments. The Amendments themselves excluded career members of the Senior Executive Service, employees of the Criminal Division of the Department of Justice (but not of the Criminal Divisions of the offices of the United States Attorneys), and employees of the Federal Bureau of Investigation. Thus, they too, like political appointees, continue to be under restrictions similar to those which existed before the 1993 Amendments. Amendments. Most recently, on January 30, 1998, 5 C.F.R. § 733.101 et seq. has been amended. The new regulations contain additional categories of permissible and prohibited political activities for employees in certain agencies and positions who reside in certain designated localities.

Questions regarding the Hatch Act may be directed to the EOUSA Legal Counsel, the Office of Personnel Management, or the Office of Special Counsel.

## 1-4.410 Restrictions on all Employees

Employees in the Department of Justice may not:

A. Use their official authority or influence to interfere with or affect the result of an election (5 U.S.C. § 7323(a)(1).
B. Solicit, accept or receive a political contribution (5 U.S.C. § 7323(a)(2), except for a political contribution to a multi-candidate political committee from a fellow member of a federal labor organization or certain other employee organizations, as long as the solicited employee is not a subordinate and the activity does not violate G below.
C. Solicit, accept, or receive uncompensated volunteer services from an individual who is a subordinate (5 C.F.R. § 734.303(d)).
D. Allow their official titles to be used in connection with fundraising activities (5 C.F.R. § 734.303 (c)).
E. Run for nomination or election to public office in a partisan election (5 U.S.C. § 7323(a)(3)), except that in certain designated communities an employee may run for office in a local partisan election but only as an independent candidate and may receive, but not solicit, contributions. 5 C.F.R. § 733.107 lists these communities.
F. Solicit or discourage the political activity of any person who is a participant in any matter before the Department (5 U.S.C. § 7323(a)(4)).
G. Engage in political activity (to include wearing political buttons), while on duty, while in a government occupied office or building, while wearing an official uniform or insignia, or while using a government vehicle (5 U.S.C. § 7324(a).
H. Make a political contribution to their employer or employing authority (18 U.S.C. 603).

## 1-4.420 Restrictions on Career SES, Criminal Division, and FBI Employees, and all Political Appointees

These employees may not:

A. Distribute fliers printed by a candidate's campaign committee, a political party, or a partisan political group.
B. Serve as an officer of a political party, a member of a national, state, or local committee of a political party, an officer or member of a committee of a partisan political group, or be a candidate for any of these positions.
C. Organize or reorganize a political party organization or partisan political group.
D. Serve as a delegate, alternate, or proxy to a political party convention.
E. Address a convention, caucus, rally, or similar gathering of a political party or partisan political group in support of or in opposition to a candidate for partisan political office or political party office, if such address is done in concert with such a candidate, political party, or partisan political group.
F. Organize, sell tickets to, promote, or actively participate in a fund-raising activity of a candidate for partisan political office or of a political party or partisan political group.
G. Canvass for votes in support of or in opposition to a candidate for partisan political office or a candidate for political party office, if such canvassing is done in concert with such a candidate, political party, or partisan political group.
H. Endorse or oppose a candidate for partisan political office or a candidate for political party office

in a political advertisement, broadcast, campaign literature, or similar material if such endorsement or opposition is done in concert with a candidate, political party, or partisan political group.

I.  Initiate or circulate a partisan nominating petition.
J.  Act as a recorder, watcher, challenger, or similar officer at polling places in consultation or coordination with a political party, partisan political group, or a candidate for partisan political office.
K.  Drive voters to polling places in consultation or coordination with a political party, partisan political group, or a candidate for partisan political office.
L.  Run as partisan candidates for local partisan political office even in those communities listed in 5 C.F.R. § 733.107 in which other Department of Justice employees may run for office. However, they may run as independent candidates in a partisan political election for a local office in the municipality or political subdivision, except for those appointed by the President with the advice and consent of the Senate. *See* 5 C.F.R. 733.105(b) and (c)(1).

The restrictions listed above A through L apply only to Career SES, Criminal Division, FBI Employees, and all Political Appointees, and are permissible activities for all other employees.

## 1-4.430 Permissible Activities

All employees may:

A.  Register and vote in any election.
B.  Express opinions as individuals on political subjects and candidates privately and, to the extent consistent with the restrictions above, publicly.
C.  Display a political picture, sticker, badge, or button in situations that are not connected to their official duties, but employees restricted as outlined in 1-4.420 may not distribute such material.
D.  Participate in the nonpartisan activities of a civic, community, social, labor, or professional organization, or of a similar organization.
E.  Be members of a political party or other political organization and participate in its activities to the extent consistent with the restrictions set forth above.
F.  Sign a political petition as individuals.
G.  Make a financial contribution to a political party or organization, except to one's federal employer.
H.  Take an active part, as a candidate or in support of a candidate, in a nonpartisan election.
I.  Be politically active in connection with a question which is not specifically identified with a political party, such as a constitutional amendment, referendum, approval of a municipal ordinance or any other question or issue of a similar character.
J.  Serve as an election judge or clerk, or in a similar position to perform nonpartisan duties as prescribed by state or local law, subject to the restrictions set forth above about certain employees not undertaking such activity in concert with political entities.
K.  Otherwise participate fully in public affairs, except as prohibited by law, in a manner which does not materially compromise their efficiency or integrity as employees or the neutrality, efficiency or integrity of their agency.

## 1-4.440 Political Referrals

In addition to restricting or limiting certain political activity, the Hatch Act also prohibits selecting officials or others involved in the examining or appointing process for competitive service positions from receiving or considering a recommendation of an applicant from a Senator or Representative, except as to the character or residence of the applicant, unless the recommendation is based on personal

knowledge or records of the sender. In no case are USAOs required to return a letter to the sender even if it does not meet the requirement stated above. Additional guidance on this is available from the EOUSA Office of Legal Counsel.

## 1-4.500 Gifts Received From Foreign Governments

Public Law No. 95-105, codified at 5 U.S.C. § 7342, governs the receipt and disposition of gifts and decorations tendered by foreign governments to federal employees, their spouses, or dependents.

Under 5 U.S.C. § 7342(c)(1)(B), an employee may, in certain circumstances, accept gifts. Under (B)(i), however, if the gift is tangible and of more than minimal value, currently defined as $245 (pursuant to regulation in effect until January 1, 1999), the gift becomes the property of the United States, and, under (c)(2) must be deposited for disposal or use by the government. Under (c)(1)(B)(ii), an employee may in certain circumstances accept an intangible gift of foreign travel or expenses for foreign travel entirely outside of the United States valued at more than $225. Under (c)(3), an employee receiving such a gift must file a statement with the Department, except when acceptance of foreign travel has been authorized in accordance with specific instructions from the Department of Justice. Under § 7342(f), the Department of Justice must submit to the Secretary of State, by January 31 of each year, a list of all such statements filed by employees during the preceding year.

Federal Property Management Regulations (FPMR) Par. 101-41 and Justice Property Management Regulation (JPMR) Part 128-49, prescribe policies and procedures governing utilization, donation, and disposal of gifts and decorations from foreign governments.

In accordance with JPMR Sec. 128-49.201, each United States Attorney's Office is required each year to submit a list of all gifts and decorations valued at greater than $50.00 received by employees, their spouses, or dependents from foreign governments during the preceding year. The list should be sent to the Executive Office, Attention: Facilities Management and Support Services Staff.

A separate statement containing the following information should be submitted by each employee receiving a gift or decoration:

A. For tangible gifts:

   o Name and title of recipient;
   o Gift, date of acceptance, estimated value, and current disposition or location;
   o Identity of foreign donor and government; and
   o Circumstances justifying acceptance.

B. For travel or expenses for travel:
C. Name and title of recipient;
D. Brief description of travel or travel expenses occurring entirely outside the United States;
E. Identity of foreign donor or governments; and
F. Circumstances justifying acceptance.

Negative responses may be communicated by telephone to the Facilities Management and Support Services Staff, EOUSA.

## 1-4.600 Post-Government Employment Restrictions

The Ethics in Government Act, 18 U.S.C. § 207 and the regulations promulgated by the Office of Government Ethics and issued at 5 C.F.R. Parts 2637 and 2641, contain several post-employment conflict of interest restrictions. The Act covers former government employees (including all officers, employees, and special government employees, both attorney and non-attorney) which may actually make or reasonably give the appearance of making unfair use of prior government employment and affiliations. Criminal penalties and disciplinary action may be imposed for violations. The three major restrictions covered by § 207 which are applicable to the United States Attorneys' office are discussed seriatim below. These regulations do not incorporate or supplant restrictions that may be contained in other laws or professional codes of conduct. *See* USAM 1-4.650.

NOTE: The regulations at § 2637 are still considered to be in effect even though they refer to provisions of the Ethics in Government Act prior to its 1991 amendment. Specifically, § 2637.202 refers to 18 U.S.C. § 207(b)(1) when it should now refer to § 207(a)(2), and § 2637.203 should refer to § 207 (c) rather than § 207(b)(ii).

## 1-4.610 Permanent Prohibition Applicable to all Employees

Under 18 U.S.C. § 207(a)(1), all employees, including special Government employees, are permanently prohibited from knowingly making, with the intent to influence, any communication to or appearance before the United States or the District of Columbia on behalf of someone other than him- or herself or the United States or the District of Columbia, in connection with a particular matter in which the United States or the District of Columbia is a party or has a direct and substantial interest, and in which the employee participated personally and substantially while a government employee.

This paragraph does not prohibit a former government employee from taking actions on his or her own behalf or from representing the United States or the District of Columbia when authorized. The matter has to have involved a specific party or parties at the time of the former employee's participation. Although the matter must have involved a party, the person on whose behalf the former employee seeks to make a communication or appearance does not have to be a party for the communication to be prohibited.

The prohibition is against making a communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or District of Columbia.

## 1-4.620 Two-Year Restriction for Supervisors

Under 18 U.S.C. § 207(a)(2), all employees, including special Government employees, are restricted for two years after leaving the government from knowingly making, with the intent to influence, any communication to or appearance before the United States or the District of Columbia on behalf of someone other than himself or herself or the United States or the District of Columbia, in connection with a particular matter in which the United States or the District of Columbia is a party or has a direct and substantial interest, and which the former employee knows or reasonably should know was pending under his or her official responsibility within a period of one year before the termination of his or her employment.

Sometimes employees lose responsibility over a matter before they leave Government employment. In spite of the plain language of the statute ("within 2 years after the termination of his or her service or employment" and "within a period of 1 year before the termination of his or her service or employment"), OGE regulations explicitly state that the two years run from the date of termination of

responsibility if this occurs before separation from the government, and that the prohibition applies to matters pending under the employee's supervision in the one-year period before termination of such responsibility over the matter, not in the one-year period before termination of employment. 5 C.F.R. § 2637.202(e).

This provision applies to supervisors and managers who did not personally handle a matter, but over which they were responsible. It is designed not only to prevent post-employment conflicts of interest, but also, through the one-year "looking back" proviso, to regulate the conduct of current managers who are contemplating resignation or retirement. Specifically, it is designed to prevent them from making managerial decisions that will be to their benefit after they cease being federal employees. Thus, employees responsible for the supervision of a case are barred from representing anyone, not just a party, in connection with that case for two years after their supervisory responsibility ends, because they might otherwise be tempted to facilitate their post-employment practice by the decisions they make as a federal manager. It is designed not only to deal with actual managerial decisions, but also to prohibit even the appearance that a manager would use his or her federal office for future private gain by using his or her authority during his or her last year of service to his or her private advantage.

This paragraph does not prohibit a former government employee from taking actions on his or her own behalf or from representing the United States when authorized. Although the person represented does not have to be a party, as noted above, the matter has to have involved a specific party or parties at the time it was pending under the former supervisor's authority.

The prohibition is against making a communication to or appearance before any officer or employee of any department, agency, court, or court-martial of the United States or District of Columbia.

## 1-4.630 One-Year "Cooling-Off" Period

Under 18 U.S.C. § 207(c), a senior employee may not make any communication to or appearance before his or her former agency on any matter in which the former employee seeks official action on behalf of any other person, except the United States, within one year after termination of his or her service or employment as such officer or employee.

According to 5 C.F.R. 2641.201(c), the one year runs from the time the individual ceases to be a senior employee, rather than from termination of government employment.

For the purposes of this section, only the United States Attorneys are considered to be "senior" employees.

The matter does not have to involve specific parties, and does not have to have been pending when the individual was the United States Attorney. The statute prohibits former United States Attorneys from contacting their former agency even on matters arising after they ceased being the United States Attorney, if they arise within one year of their departure. It was designed to prevent the use of personal influence based upon past Government affiliations. The prohibition applies even when the United States is not a party and even when it does not have a direct and substantial interest.

Unlike the other prohibitions, this one is limited to communications to or appearances before the employee's former agency. The statute, at § 207(h), allows OGE to designate components within a department to be separate agencies, thus allowing senior employees to make communications to or appearances before other components. At our request, OGE has issued regulations under which, for

United States Attorneys, the agency consists only of his or her former district, the office of the United States Marshal for his or her former district, and EOUSA.

NOTE: In 1993, the Department asked OGE to eliminate the local Marshal's office from this definition, so that a former United States Attorney could make a communication or appearance before that entity within one year of no longer being the United States Attorney. The Department was orally advised that OGE would approve this request. However, it has never published a federal register notice amending Appendix B to 5 C.F.R. Part 2641 in this regard, and advises us that until it does so the prohibition still applies.

The other two restrictions allow a former employee to represent the United States or the District of Columbia, when properly authorized, regardless of earlier participation or supervision of the same matter. The one-year "cooling off" period restricts this to representation of the United States, and does not mention the District of Columbia. As with the other restrictions, this one does not preclude a former employee from taking actions on his or her own behalf.

## 1-4.640 Sanctions

Former employees willfully in violation of § 207 are subject to a sentence of imprisonment for up to five years. If not willful, the maximum sentence is one year. Substantial fines may also be imposed. In addition, offenders are subject to a civil penalty of up to $50,000 per infraction.

## 1-4.650 Other Restrictions on Post-Employment Activities

In addition to 18 U.S.C. § 207, the American Bar Association (ABA) Code of Professional Responsibility, the ABA Model Rules of Professional Conduct, rules of state bar associations, and court decisions restrict the conduct of attorneys who are former government employees and their firms and affiliates. There is nothing in § 207 which prevents courts and bar associations from holding former government employees to standards more demanding than the minimal requirements of the criminal law. *See* 5 C.F.R. 2637.101(c)(9).

Presidential appointees were also asked to sign a "pledge" which subjects them to a 5 year ban on certain activities when they leave the government. All Presidential appointees should be mindful of this additional restriction when they leave the government.

## 1-4.660 Restrictions on Seeking Employment Outside the Government

Besides restricting certain post-employment activities, law and regulation require employees in certain circumstances to choose between participating in a particular matter and seeking employment. Specifically, 18 U.S.C. § 208 and 5 C.F.R. § 2625.601 preclude an employee from participating in an activity, absent a waiver, if the employee is seeking employment with persons who would be affected by the performance of lack of performance of the employee's official duties. For further information, see August 26, 1996, Agency Ethics Official Memorandum on Seeking Employment in the Private Sector.

## 1-4.700 Purchase or Use of Certain Forfeited and Other Property

Absent the approval of the Director, EOUSA, no employee shall purchase, directly or indirectly, from the Department of Justice or its agents property forfeited to the United States and no employee shall use property forfeited to the United States which has been purchased, directly or indirectly from the Department of Justice or its agents by his or her spouse or minor children. Approval may be granted

only on the basis of a written determination by the Director, EOUSA, that in the mind of a reasonable person with knowledge of the circumstances, purchase or use by the employee of the asset will not raise a question as to whether the employee has used his or her official position or nonpublic information to obtain or assist in an advantageous purchase or create an appearance of loss of impartiality in the performance of the employee's duties. A copy of the written determination shall be filed with the Deputy Attorney General. 5 C.F.R. § 3801.104.

**May 2003**                                                    **USAM Chapter 1-4**

EXHIBIT 6



# Office of the Attorney General
# Washington, D.C. 20530

JURISDICTION FOR INVESTIGATION OF ALLEGATIONS OF MISCONDUCT
BY DEPARTMENT OF JUSTICE EMPLOYEES
Order No. 1931-94

By virtue of the authority vested in me as Attorney General, including 28 U.S.C. §§ 509, 510 and the Inspector General Act of 1978, as amended, I hereby direct that the following procedures be followed in the investigation of allegations of misconduct by Department of Justice employees:

I. Jurisdiction

A. Office of Professional Responsibility of the Department of Justice

The Office of Professional Responsibility of the Department of Justice ("DOJ OPR") shall have jurisdiction to investigate allegations of misconduct by Department attorneys that relate to the exercise of their authority to investigate, litigate or provide legal advice. DOJ OPR also shall have jurisdiction to investigate allegations of misconduct by law enforcement personnel when they are related to allegations of misconduct by attorneys within the jurisdiction of DOJ OPR.

B. Offices of Professional Responsibility of the Federal Bureau of Investigation and Drug Enforcement Administration

The Offices of Professional Responsibility of the Federal Bureau of Investigation ("FBI OPR") and the Drug Enforcement Administration ("DEA OPR") shall have jurisdiction to investigate allegations of misconduct by employees of their respective agencies. Employees of the FBI or DEA who wish to report an allegation outside of their component may report to the Deputy Attorney General, who shall assign the matter as appropriate.

C. Office of the Inspector General of the Department of Justice

The Office of the Inspector General ("OIG") shall have jurisdiction to investigate allegations of misconduct, other than those in (A) and (B) above, by any Department employee, or of waste, fraud, or abuse by any contractor, grantee or other person doing business with or receiving benefits from the Department of Justice.

II. Coordination Among Offices

A. In General

All components of the Department of Justice shall work cooperatively. Allegations received by one office that should be investigated by another office shall be referred to the

appropriate office. In the event of disagreements concerning jurisdiction, the Deputy Attorney General will determine which office should investigate a particular allegation.

B. Notifications by FBI OPR and DEA OPR of Internal Investigations

FBI OPR and DEA OPR shall notify DOJ OPR and OIG of the existence of investigations of employees of their respective agencies, except where either agency determines that notification could compromise the integrity of an investigation.

In all cases, DEA OPR and FBI OPR shall report the results of their investigations to DOJ OPR and OIG.

C. Requests for Expansion of OIG's Authority

If OIG believes that it should take charge of a particular allegation under investigation by another office, the Inspector General may request authority from the Deputy Attorney General to take responsibility for the investigation.

D. Notifications by OIG of Matters Reflecting on the Professional Ethics, Competence or Integrity of Department Attorneys

OIG shall notify DOJ OPR of the existence and results of any investigation by OIG that reflects upon the professional ethics, competence or integrity of a Department attorney, for appropriate action by OPR.

E. Coordination Between OIG and FBI in Other Criminal Investigations

To ensure full and effective coordination of investigative activities, the FBI and OIG shall notify each other of the existence of all criminal investigations that fall within their joint jurisdiction over crimes involving the operations of the Department of Justice, except where either agency determines that notification could compromise the integrity of an investigation.

In all cases, the FBI and OIG shall notify each other of the results of criminal investigations that fall within their joint jurisdiction over crimes involving the Department of Justice.

## III. Confidentiality

Any sensitive information obtained by OIG or OPR about any law enforcement matter shall be held by them subject to the same standards of confidentiality and privacy under which such information would be held by any other component of the Department of Justice.

## IV. Audits and Inspections by OIG

Nothing in this Order restricts the existing authority of OIG to conduct audits and inspections.

## V. Relationships with Prosecutive Offices

Nothing in this Order affects the existing relationships between investigative agencies and prosecutive offices.

## VI. Pending Matters

This Order shall not require the transfer of any matter under investigation at the time this Order is adopted.

## VII. Supersession

This Order supersedes Order No. 1638-92.

Janet Reno
Attorney General

Date: November 8, 1994

Go to: Cover Memorandum// U.S. Attorneys' Manual bluesheet, § 1-4.100//Attorney General's FOIA Page// FOIA Home Page//Justice Department Home Page