UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
ANGEL RUIZ RIVERA,             )
                               )
            Plaintiff,         )
                               )
      v.                       )   Civil Action No. 07-0019 (RBW)
                               )
MICHAEL B. MUKASEY,            )
Attorney General, et al.,      )
                               )
            Defendants.        )
                               )
_____)
```

**ORDER**

Angel Ruiz Rivera, the petitioner/plaintiff in this civil case,[1] petitions this Court for a writ of mandamus directing Michael B. Mukasey, the Attorney General for the United States,[2] along with H. Marshall Jarett, the Director of the United States Department of Justice's Office of Professional Responsibility (the "OPR"), Glenn Fine, the Inspector General of the United States Department of Justice, and unnamed Assistant United States Attorneys to properly "investigate[] a complaint for misconduct filed by [the petitioner] against other [Assistant United States Attorneys]," Mandamus Petition at 2 (the "Pet."). The petitioner requests in the alternative that the Court award him "just compensatory and punitive damages" pursuant to 42 U.S.C. §§ 1983,

---

[1] For ease of reference, the Court will refer to Ruiz Rivera simply as the "petitioner" throughout this order, and to the various respondent/defendants named by the petitioner in his mandamus petition as the "respondents."

[2] The petitioner's mandamus petition, filed January 3, 2007, names former Attorney General Alberto R. Gonzalez as a respondent. Because the petitioner's mandamus petition is clearly directed at the named respondents in their official capacities, at least insofar as the petitioner's request for mandamus relief is concerned, the Court has substituted Attorney General Mukasey as a respondent in lieu of former Attorney General Gonzalez pursuant to Federal Rule of Civil Procedure 25(d).

1

1985, and 1986 (2000). Id. ¶ 4. Currently before the Court is the Federal Respondents' Motion to Dismiss Petition for Writ of Mandamus and All Claims for Damages and the petitioner's Motion to Request the Court to Issue Orders to Answer and to Show Cause, which the Court construes as a motion for expedited relief. After carefully reviewing the petitioner's mandamus petition, the parties' motions, and all memoranda and exhibits relating thereto,[3] the Court concludes that it must dismiss the petitioner's mandamus petition for lack of standing.[4]

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." Raines v. Byrd, 521 U.S. 811, 818 (1997) (internal quotation and citation omitted). "Article III standing . . . enforces [that] requirement." Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 11 (2004). "To demonstrate standing under Article III, a party must show injury in fact that was caused by the conduct of the defendants and that can be redressed by judicial relief." Public Citizen v. Nat'l Highway Traffic Safety Admin., 489 F.3d 1279, 1289

---

[3] In addition to the petitioner's mandamus petition, the respondents' motion to dismiss, and the petitioner's motion for expedited relief, the Court considered the following documents: (1) the Memorandum of Points and Authorities in Support of Respondents' Motion to Dismiss (the "Resp. Mem."), (2) the Memorandum in Support of Petitioner's Motion in Response to Respondents' Motion to Dismiss (the "Pet. Opp'n"), (3) the Respondents' Reply (the "Resp. Reply"), and (4) the Petitioner's Surreply (the "Pet. Surreply").

[4] The respondents assert numerous arguments in support of dismissal of the petitioner's mandamus petition, including (1) lack of standing, Resp. Mem. at 12-13, (2) sovereign immunity with respect to any claims against the respondents in their official capacities, id. at 11-12, (3) lack of proper service on the respondents in their personal capacities, id. at 6, (4) failure to state a claim under §§ 1983, 1985, and 1986, id. at 7-9, (5) untimeliness with respect to any claim under § 1986, id. at 9, (6) qualified immunity with respect to any claims against the respondents in their personal capacities, id. at 10-11, and (7) failure to allege facts sufficient to warrant a writ of mandamus, id. at 13-15; Resp. Reply at 1-2. Because the Court concludes that the petitioner lacks standing to bring his mandamus petition for reasons other than those advanced by the respondents, the Court does not address any of the arguments made by the respondents in their memoranda of law in support of their motion to dismiss or the arguments made by the petitioner in opposition to that motion.

(D.C. Cir. 2007). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

The gravamen of the petitioner's mandamus petition is that the OPR (or, alternatively, the OIG)[5] failed to properly prosecute his complaint against certain Assistant United States Attorneys and the United States Attorney for Puerto Rico for their alleged malfeasance in collateral litigation between the United States Department of Energy, the Instituto de Educacion Universal (the "IEU"), a "technical and higher education institution . . . accredited by the Accrediting Commission of Career Schools and Colleges of Technology," Pet. ¶¶ 1, 8, and the petitioner, who founded and serves as the president of the IEU, id. ¶ 1, before the United States District Court for the District of Puerto Rico and the First Circuit Court of Appeals, see id. ¶ 29 ( alleging that the OPR must have "neglected" the petitioner's complaint because it "plainly ruled against the evidence submitted [by the petitioner] in support [of his complaint]").[6] According to the

---

[5] The petitioner asserts that he named Inspector General Fine as a respondent because he "does not know . . . at this early stage of the proceedings[] whether the [complaint] he filed . . . was investigated by []OPR officers, []OIG officers, or both." Pet. Opp'n at 3. This assertion makes little sense given that the petitioner's complaint was, by his own admission, submitted to the OPR, not the OIG. Pet. ¶ 15.

[6] The litigation between the parties arose out of an audit of the IEU conducted by the DOE in 1994 in which the DOE found that (1) the IEU had "overstated its 'clock hours' of instruction;" (2) the IEU had "requisitioned excessive student aid payments (and compounded the problem by using the ill-gotten funds for unauthorized purposes);" and (3) the IEU had "failed to refund grants received for pupils who never completed the programs to which the grants related." Instituto de Educacion Universal Corp. v. United States Dep't of Educ., 209 F.3d 18, 20 (1st Cir. 2000). In January of 1997, "an administrative law judge . . . reversed the 'clock hours' finding" while affirming other agency determinations, but the Secretary of the Department of Education (the "Secretary") reversed this ruling and "reinstated the 'clock hours' finding." Id. The IEU and the petitioner challenged this determination, first (in error) before the First Circuit Court of Appeals, and subsequently before the United States District Court for the District of Puerto Rico. Id. at 21.
After the district court "issued a terse, three-page order in which it dismissed [the IEU's and the petitioner's] action," id., the IEU (but not the petitioner) filed an appeal to the First Circuit, which reversed the district court's decision because "the interests of justice required that the court reconsider and modify its earlier order" to address the substance of the IEU's arguments, id. at 24. On remand, the district court granted summary judgment in favor of the DOE and the Secretary of the Department of Education (the "Secretary"). See Instituto de Educacion Universal, Inc. v. United States Dep't of Educ., 341 F. Supp. 2d 74, 85 (D.P.R. 2004) (awarding the defendants summary judgment in the amount of $2,725,879 in assessed liabilities and $150,000 in fines). The First
(continued...)

petitioner, the "[Assistant United States Attorneys] who [] represented the [DOE]" in the IEU's suit before the district court in Puerto Rico "were derelict in complying with their ministerial duties by failing to properly sift the evidence submitted by the [DOE's attorneys]," id. ¶ 26, thereby "reduc[ing] their role" to that of "a mere rubber stamp" for the alleged "malicious prosecution" committed by attorneys for the DOE.  Pet. ¶¶ 13, 27.  The attorneys in the OPR, in turn, allegedly either engaged in "a cover-up of their colleagues['] misconduct and unethical behavior[] or were derelict in complying with [their] . . . ministerial and ethical duties" by failing to investigate the petitioner's complaint.  Id. ¶ 29.

Even if the Court were to assume that these allegations are true, they would not establish the "injury in fact" necessary to satisfy Article III's standing requirement.  "To establish injury-in-fact, the plaintiff must show an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  New World Radio, Inc. v. FCC, 294 F.3d 164, 170 (D.C. Cir. 2002) (internal quotation and citation omitted).  Consequently, "a citizen lacks standing to contest the policies of [a] prosecuting authority when he himself is neither prosecuted nor threatened with prosecution" because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."  Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973).

---

[6](...continued)
Circuit eventually dismissed the IEU's appeal of the district court judgment as untimely (the notice of appeal was filed 119 days after the filing deadline), and affirmed the district court's determination that the petitioner himself was barred from participating in the case because the petitioner did not "perfect an appeal from the original judgment" of the district court, in which the district court dismissed the petitioner from the case.  Ruiz-Rivera v. United States Dep't of Educ., No. 05-1775, available at 2006 WL 1343431, **1-2 (1st Cir. 2006) (May 10, 2006) (unpublished opinion). In a separate decision, the First Circuit affirmed the district court's denial of the IEU's motion for relief from the district court's judgment under Federal Rule of Civil Procedure 60(b), finding "no error" in the district court's ruling.  Instituto de Educacion Universal v. United States Dep't of Educ., No. 06-1562, available at 2007 WL 1519059 (1st Cir. May 11, 2007) (unpublished opinion).

The petitioner's request for a writ of mandamus is precisely the type of attempted intrusion into the authority of a prosecutor (in this case, the OPR) that the Supreme Court proscribed in Linda R.S. Such an investigation would not benefit the petitioner in any "concrete" or "actual" way. At most, it would result in "a report . . . recommend[ing] an appropriate range of disciplinary actions for consideration by the attorney's supervisors," Pet. Surreply Ex. 3 (U.S. Department of Justice Office of Professional Responsibility Policies and Procedures) ¶ 9, or, if the misconduct were serious enough, a referral to the "bar disciplinary authorities in the jurisdiction where the attorney is licensed" advising those authorities of the agency's findings, id. ¶ 11. The petitioner might derive some emotional satisfaction from a report confirming the petitioner's belief that the DOE and the Assistant United States Attorneys representing the DOE acted in an unethical manner, but those intangible benefits do not satisfy the "injury in fact" requirement. See Common Cause v. FEC, 108 F.3d 413, 417 (D.C. Cir. 1997) ("To hold that a plaintiff can establish injury in fact merely by alleging that he has been deprived of the knowledge as to whether a violation of the law has occurred would be tantamount to recognizing a justiciable interest in the enforcement of the law. This we cannot do."); Humane Soc'y of the United States v. Babbitt, 46 F.3d 93, 98 (D.C. Cir. 1995) ("[G]eneral emotional harm, no matter how deeply felt, cannot suffice for injury-in-fact for standing purposes.").

If anything, the petitioner's mandamus petition is most analogous to suits by private citizens against state bars or their officials who refuse to prosecute the citizens' complaints. Like the plaintiffs in those suits, the petitioner seeks to hold accountable those who allegedly have failed to prosecute third parties engaged in wrongdoing. See, e.g., Smith v. Shook, 237 F.3d 1322, 1323-24 (11th Cir. 2001) (section 1983 claim asserted against Bar Counsel for the State

Bar of Georgia for declining to prosecute plaintiff's complaint against former attorney); Doyle v. Okla. Bar Ass'n, 998 F.2d 1559, 1562-63 (10th Cir. 1993) (section 1983 claim asserted against Oklahoma Bar Association, its executive director, general counsel, assistant general counsel, and members of Professional Responsibility Commission based on bar association's failure to pursue plaintiff's attorney grievance); Koukios v. Ganson, 229 F.2d 1152, 1152 (6th Cir. 2000) (unpublished opinion) (section 1983 claim asserted against Cincinnati Bar Association (the "CBA") and Supreme Court of Ohio Office of Disciplinary Counsel (the "ODC") for failure to act on plaintiff's complaints about his attorney). And like the plaintiffs in those cases, the petitioner has no standing to involve himself in the prosecution (or lack thereof) of those third parties. See Smith, 237 F.3d at 1324 (holding that plaintiff "lacked standing to challenge [Bar Counsel's] decision not to prosecute [the plaintiff's] former attorney"); Doyle, 998 F.2d at 1566-67 ("The fact is that the only one who stands to suffer direct injury in a disciplinary proceeding is the lawyer involved."); Koukios, 229 F.3d at 1152 (holding that plaintiff "lacked standing to enforce Ohio's lawyer disciplinary system by suing the ODC or the CBA").

"The standing doctrine helps ensure that the Judicial Branch does not perform functions assigned to the Legislative or Executive Branch and that the judiciary is the proper branch of government to hear the dispute." Public Citizen, 489 F.3d at 1289. Here, the petitioner seeks to entangle the Court in the internal investigative processes of the DOJ–a quintessentially executive function. The Court declines this request. If the petitioner truly believes that the DOE and the Assistant United States Attorneys who represented that agency in it litigation against the petitioner and the IEU have engaged in "egregious malicious prosecution, reckless abuse of the legal process, unethical intimidation of witnesses, wanton occlusion of exonerating evidence,

deliberate obstruction of justice, and reiterated fraud upon the court," id. at 5, then he should pursue whatever recourse is available to him with respect to those attorneys in the appropriate state or federal forum.  The petitioner has no standing to compel the DOJ to investigate its own lawyers for his gratification.

It is therefore

**ORDERED** that the Federal Respondents' Motion to Dismiss Petition for Writ of Mandamus and All Claims for Damages is **GRANTED**.  It is further

**ORDERED** that the petitioner's Motion to Request the Court to Issue Orders to Answer and to Show Cause is **DISMISSED** as **MOOT**.  It is further

**ORDERED** that the petitioner's Mandamus Petition is **DISMISSED** for lack of standing.  It is further

**ORDERED** that this case is **CLOSED**.

**SO ORDERED** this 13th day of December, 2007.

                                        REGGIE B. WALTON
                                        United States District Judge