RECEIVED
DEC 18 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGEL RUIZ RIVERA

Petitioner

v.                                                            07-0019 (EGS)(RBW)

ALBERTO R. GONZALES, et al.,

Respondents

## MOTION TO FACILITATE A RULING

TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF COLUMBIA (HUSDCDC):

Comes now the Petitioner, Angel Ruiz Rivera (ARR), appearing here Pro Se Ipso, and respectfully states, alleges and prays as follows:

Since the abundant, robust and overwhelming evidence in support of our timely filed Mandamus Petition may be lost in sight, due to its voluminous size, we are hereby, ferreting it to its bare raw minimum, in order to facilitate this Court's evaluation of same and consequently save some of its valuable time and effort. This is done in order to place this HUSDCDC in a position to be totally persuaded, if not thoroughly convinced, of the absolute Truth behind our just claims. That is, that the Petitioner's timely filed Complaint For Professional Misconduct (CPM) against some U.S. Attorneys' Office (USAO) Attorneys at the U.S. Department of Justice (USDJ), Office of Professional Responsibility (OPR), was covered up or callously ignored.

The issues, if they can be called such, behind the initial controversy that evolved and have resulted in the instant Petition, are three administrative "findings" which were

1

viciously fabricated, inflated and manipulated, against Instituto de Educacion Universal (IEU), a higher education institution founded and presided by the Petitioner, in two (2) U.S. Department of Education (USDE) pseudo-audits, which were maliciously prosecuted by various USDE legal counsels and subsequently prosecuted vindictively by some USAO Attorneys who intervened as their client-agency counsels. This vindictive prosecution was the one which provoked the CPM against the USAO Attorneys before the USJD-OPR; which was covered up, or totally ignored, provoking the instant Mandamus Petition.

The first original pseudo-audit was performed by Auditor-In-Charge (AIC), Mr. Rafael Nater, a Certified Public Accountant (C.P.A) and lawyer who was expelled from the USDE's, Office of the Inspector General (OIG), after and in part as a result of his flaws in same. The latter *fait accompli* was timely denounced in writing by the own OIG's, Quality Assurance Review (QAR) Team Report (TR). See Exhibit 1. The QARTR was issued by the best experts within the expert agency that the USDE's-OIG had available at the time and was wantonly and egregiously concealed by the USDE legal counsels from the USAO Attorneys, the Administrative Law Judge (ALJ) and all the heretofore intervening courts. In this sense, the principle of the deference owed to the experts in the expert agency that the Administrative Procedures Act (APA) applicable and controlling jurisprudence mandates, was totally violated here by the own USDE legal counsels who abused the legal process, obstructed justice, intimidated witnesses, suborned perjuries and committed fraud upon all the courts in their attempt to consummate their malicious prosecution against the Petitioner and IEU because of their invidious discrimination for reasons of ethnicity and racist bigotry.

The second USDE's pseudo-audit, was performed by AIC, Mr. Felix Lugo, who was an experienced but corrupt auditor with many years in the federal civil service. Lugo resigned after his pseudo-audit of Petitioner's IEU. He then joined their main competitor, profit-making, Instituto de Banca y Comercio (IBC) and its President, Fidel Alonso-Valls.

When IBC's President, Alonso-Valls, who hired Lugo after he personally made certain that the Petitioner's institution had been destroyed, became indicted by one of the complained about U.S. Attorney's (USA), Mr. Guillermo Gil, Esq., on January 23, 2002, [see 02-00042 (HL), Exhibit 2],[1] Lugo was *ipso facto*, appointed IBC's President. While this indictment transpired, the USDE, in an evidently obvious disparate treatment, unjustifiably did not take against IBC any of the regulatory mandated actions against institutions when its President was criminally indicted. For example, the USDE did not switch IBC into the reimbursement method of payment, or initiated actions to terminate its eligibility to administer the Higher Education Act (HEA) of 1965, as amended, federally funded, Student Financial Assistance Programs (SFAP's).

Eventually, Petitioner's ex high school classmate, USAO Attorney, Gil, withdrew these criminal charges for mysterious reasons and Alonso Valls, once off the USAO's hook, resumed his IBC's presidency, not before rewarding Lugo for his services. Lugo, incidentally, had also been personally responsible for the closing of IBC's second main competitor. See San Juan City College v. U. S., No.01-73C, U.S. Court of Federal Claims, 8/8/2003, and 03-5180 (Fed.Cir.12/9/2004).

This is relevant because as a result of the destruction of its two (2) main

---

[1] For conspiracy to Interfere With Commerce by Extortion; Theft concerning Programs receiving Federal Funds; Conspiracy to Commit Money Laundering and Money Laundering.

3

competitors, IEU and SJCC, IBC's income has grown by many tens of millions of dollars. Consequently, its President has unjustly enriched himself. Not as a result of his insight, effort and labor, but at least in part due to corrupt ex-federal auditor Lugos' well paid services to his benefit with Lugo's manipulations and perjuries having been condoned and/or acquiesced to by the USAO attorneys.

The USDE legal counsels who concocted the conspiracy against the Petitioner and IEU were, first; Ms. Alexandra Gil Montero, Esq., who was also forced eventually to resign or was constructively expelled from the USDE after her malicious prosecution of the Petitioner and IEU. Second, Mr. Russell Wolff, Esq., who is the only confederate from the original ones who inexplicably has remained active in the USDE with total impunity even when he was one of the architects and confederates of this fraud. One of the reasons why this Mandamus Petition should issue is because this sort of unethical misconduct should not repeat itself ever in this or whichever judicial system, and Wolff's evidently obvious fraud upon the courts deserves his disbarment, to say the least.

The first USAO's Attorney who covered up the USDE's legal counsels' malicious prosecution and converted it into a vindictive prosecution was; [2] Mr. Guillermo Gil, Esq., who had personal knowledge of the malicious prosecution of his client agency since the Petitioner had personally denounced this to him. Gil personally knew the Petitioner very well because they had been high school classmates. They also had met at Gil's office

---

[2] Gil, instead of dropping the fraudulent claims raised by its client agency legal counsels against the Petitioner, as the U.S. Attorney's Manual, ethics and mere logic mandates, deliberately and callously chose instead to cover up their obviously evident malicious prosecution due to the fact that he entered into a vindictive mode. Gil became mad at Petitioner when the latter mentioned in a complaint for judicial misconduct he filed against USDCDPR Judge Fuste, as an example of evident disparate treatment, the superavit of due process given to Gil's sister in Gil De Rebollo v. Miami Heat, 137 F.3d 56 (1st Cir. 03/05/1998), *vis a vis* the deficit of due process given to the Petitioner in 96-1893 (JAF).

4

when Petitioner requested a personal meeting to learn if he was being a target of a FBI or Grand Jury Investigation. See Affidavit regarding this set of facts, Exhibit D ←

The second USAO Attorney was Mr. Humberto Garcia, Esq.. Garcia was egregiously derelict in his duties by failing to comply with his ministerial and ethical duties, since the Petitioner timely complained to him about the malicious prosecution by the USDE legal counsels converted into a vindictive prosecution by his predecessor. This was the reason why the Complaint for Misconduct was timely filed before the USDJ-OPR, only to be covered up, or totally ignored, reason why this Mandamus Petition should issue. See letters to Garcia by Petitioner as Exhibit 1 of the CPM, Appendix 1.

### THE OIG PSEUDO AUDIT "FINDINGS" WHICH ORIGINATED ALL THIS FRAUD – THE CLOCK HOUR REGULATION ISSUE

The first OIG pseudo-audit finding was the clearly ultra vires application of an amendment to the "clock hour" regulation that was published on July 23, 1993, but which was illegally applied retroactively to the award year starting July 1, 1993. The illegal retroactivity was not only because of the obviously evident violation of the general principle of non-retroactivity that governs the Administrative Procedures Act (APA), since by September 7, 1993, when it became effective, the Fall Semester was already on its way. But more importantly, because the applicable and controlling statute, the HEA, explicitly included a clause expressly proscribing the application of that amended regulation to the award year in question.[3] See 20 U.S.C. 1070, et seq., applicable at the time of the events that originated the controversy that has us litigating here, where on section 482, "Master Calendar", at (c), it stated:

---

[3] This assuming arguendo, that the application of the interpretation of the USDE to the controversy in question could be conceded, which simply cannot for reasons that become more than obvious in Endnote 1.

5

"Delay of Effective Date of Late Publications":

"Any regulatory changes initiated by the Secretary affecting the programs pursuant to this title that have not been published in final form by December 1, prior to the start of the award year **shall not become effective until the beginning of the second award year after** such December 1 date." Exhibit 4.

As anyone can corroborate, since the regulatory changes **were not published** in final form by December 1, 1992, prior to the start of the award year, (July 1, 1993), but instead they were published on July 23, 1993, **by law, the regulatory change could not** become effective until the beginning of the second award year after, that is, July 1, 1994. Since the USDE legal counsels knew, or should had known [4] about this clause in the law, the malicious prosecution in this vein is evidently obvious. The same principle applies to the USAO's Attorneys, under Gil, who for purely vindictive reasons limited themselves to cover up the malicious prosecution of their client-agency legal counsels, or worst, acted as mere rubber stamps of the former playing second fiddle to them. Consequently, the USDJ-OPR does not have any pretext on which to justify the cover up of such a clearly ultra vires act by its prosecutors who according to the U.S. Attorney's Manual have the ministerial and ethical obligation to sift the evidence of their client-agency before prosecuting any further.

For this reason only, without more, this HUSDCDC has more than enough reasons to grant the Mandamus Petition timely requested, without reservations of any sort.

---

[4] See Harlow v. Fitzgerald 457 U.S. 800 (1982), "If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to "know" that the law forbade conduct not previously identified as unlawful. Until this threshold immunity question is resolved, discovery should not be allowed. If the law was clearly established, the immunity defense ordinarily [457 U.S. 800, 819] should fail, since a reasonably competent public official should know the law governing his conduct.. "

6

If more was needed in this vein, we include under Endnote 1, more than fifteen (15) additional legal reasons why there is no way or manner that the OPR may justify its cover up of the misconduct complained about. This simply due to the *fait accompli* that the "criteria" behind the application of the interpretation of the clock hour regulation by the confederates against the Petitioner and IEU, was outrageously based on an answer to a question in a Questions and Answer (Q & A) section of a clearly non-binding Dear Colleague Letter, which had been for years rejected by all the USDE authorities, including; its most senior OGC legal counsel, its Chief Auditor and various of its Administrative Law Judges (ALJ's). This is one of the objective reasons why this cover up must be uncovered, and a responsible investigation should follow, to find out who covered up all this corrupt and fraudulent misconduct especially in view of all the overwhelmingly clear evidence against it.

THE OIG PSEUDO AUDIT "FINDINGS" WHICH ORIGINATED ALL THIS FRAUD – THE EXCESS CASH REGULATION ISSUE

Since the outset of the controversy that have led to this Mandamus Petition, the Petitioner honestly conceded as its President, that IEU had occasionally incurred into certain instances where it had requested to the USDE and obtained cash in excess of the immediate needs of its students SFAP's or what their credits in IEU's accounts receivable ledger could justify, accounting wise. These excess cash instances were few and with low balances as disclosed in the notes of IEU's audited financial statements issued by truly independent C.P.A. firms. This HUSDCDC ought to keep in mind that at the time, (1991-1994), the funds requested were based on a cash forecasting method that was not perfect and had a certain relative degree of error. The own USDE recognized this in its "tolerance" levels.

The forecasting was affected by the outgoing students that dropped out and/or graduated, both figures an unknown variable, plus the new incoming students, whose figure was also an unknown variable which depended upon the eventual enrollment that finally resulted. Perhaps the best way to explain how this worked at the time, would be to quote how the own USAO's Attorney, expressed it to the District Court for the District of P.R., in September 17, 1996, in its Motion For Summary Judgment in 96-1893(JAF), at p.9, of Instituto de Educacion Universal, Et Al, Et Al. v. U.S. Department of Education, Et AL, Et Al., the Bivens Complaint that the Petitioner originally filed against the USDE officers in charge of this fraud.

> "Under the advance system, the Department provides funds to an institution before the institution pays student beneficiaries. In general, the Department provides theses funds based simply upon an institution's request for them. An institution is not required to account to the Department for these payments before receiving them. An after-the-fact-accounting is provided through a required annual audit. 34 C.F.R. section 668.23." (Underlined in Original).

As anyone can corroborate, from the words of the own USAO Attorney, the regulations at the time allowed for a request-first and an accounting-second, method of cash request. But the Petitioner's honesty as IEU's President in admitting to the certain instances when excess cash was held on hand, nor the timely filed audited financial statements with unqualified or "clean" opinions by independent C.P.A. firms such as Peat Marwick (later KPMG) and Valdes Garcia & Marin (VGM), the best reputed international and local firms respectively, who disputed the USDE "finding", were not enough for the USDE officers who manipulated the data in order to reach their desired result of a crass and gross inflation of same.

Since the purpose of this Motion is to save this HC's time and effort, we will summarize the evidence we had dissected for it, by quoting what the own USDE-OIG's

QARTR wrote about this "finding", in its Specific Observations section, cited above, included here as Exhibit 1.

> 2. The audit work papers contain two different methods for calculating imputed interest. D-1 calculates interest on a daily basis, **but the logic is faulty**. D-1-1 calculates interest on a six-month basis **which cannot be justified**. The report says we calculated interest of a monthly basis. **This statement obviously is not supported by the work papers.**

This HDCDC should not underestimate the fact that this quote is from the written language chosen by the own USDE-OIG's experts in this vein and that this section and the entire QARTR was wantonly and egregiously concealed by the USDE legal counsels from all the USAO Attorneys, their client-agency legal representatives, besides of course, the Petitioner and IEU. In this sense, the USAO Attorneys may have as a partial pretext for their misconduct the fact that the USDE legal counsels hid from them, not only the Truth but perhaps most importantly, the evidence they had in their possession against their malicious prosecution of the Petitioner and IEU which they also deliberately withheld from the USAO Attorneys. In any event, what is pertinent here is not to underemphasize the fait accompli that the own OIG's QARTR chastised this "finding".

For this reason only, without more, this HCDDC has more than enough reasons to grant the Mandamus Petition timely requested, without reservations of any sort.

If more was needed in this vein, we include under Endnote 2, additional legal reasons why there is no way or manner that the OPR could, or may justify its cover up of the USAO's Attorneys misconduct complained about regarding this issue, which is still awaiting for the appropriate disciplinary measures, regardless if same were provoked by the USDE legal counsels or resulted from the USAO's Attorneys own initiative.

THE USDE's INSTITUTIONAL REVIEW BRANCH (IRB) PROGRAM REVIEW (PR) PSEUDO AUDIT "FINDING" WHICH ORIGINATED ALL THIS FRAUD – THE

"UNPAID REFUNDS" ISSUE

Of all the frauds committed by the USDE legal counsels, first to their client-agency counsels-all the intervening USAO's Attorneys, and second, to the all the intervening courts, none is more egregious, preposterous and vicious that this one, that is without saying that the above ones were not. The refunds were simply that, a refund of all or part of the SFAP's funds received that had to be returned due to the student's reduction in academic load or his/her withdrawal from IEU. The refunds were paid by way of the reprocessing of the payment vouchers through which the corresponding funds were debited from the institution's funds authorization first, and second, from the funds themselves that the USDE owed to the institution and held in total control in its account in USDE's Finance Division or Department (called ED Finance). It was this simple.

By the time corrupt auditor Lugo performed IEU's audit (April 1995), most of the 512 refunds had admittedly not been paid. (It was then the customs and usage to pay them near the end of the award year: June). At the audit, Petitioner's brother, Jose Ruiz Rivera, as IEU's Fiscal Officer, under Petitioner's authority, honestly provided Lugo with a list of the 512 students that theretofore had dropped out and for which IEU owed a refund to the USDE. By the time the audit report was issued (October 1995), [its Final Program Review Determination (FRPD) in June 3, 1996], all those refunds had already been paid just as they were paid for the previous years under audit: 1992-1994. Petitioner timely produced as beyond doubt evidence, the debits not only of the $655,554 involved in the 512 imputed cases but of $1,120,192 that were debited in July 1995 as a result of five (5) batch reports including the payment vouchers of the 512 cases imputed and many more that evolved after the April 1995 Lugo's audit date.

10

We respectfully invite this HC to review the evidence of these refunds payments constituting of the Pell Grant Statement of Account (PGSA) and the ED Payment History and Account Balance Report (EDPHAVR) official USDE documents. They prove without a doubt that not only the $655,554 viciously upheld by the USDE legal counsels were indeed paid, but that in five (5) batch reports only, IEU paid $1,120,192 by way of the customary reprocessing of the payment vouchers which resulted in the corresponding debit from IEU's funds authorization, first, and the funds themselves second, held in and by ED Finance. See Exhibit 5.

For this reason only, without more, in view of this evidence, this HCDDC has more than enough reasons to grant the Mandamus Petition timely requested, without reservations of any sort.

If more was needed in this vein, we include under Endnote 3, additional legal reasons why there is no way or manner that the OPR could, or may justify its cover up of the misconduct complained about regarding this issue. Among the complementary and supplementary evidence in this vein, you will find "smoking-gun" evidence demonstrating without a doubt when and how each one of the 512 viciously upheld "unpaid refunds" were paid indeed. Actually this evidence shows that the data given to Lugo back in April 1995 eventually resulted into being 99.37% accurate.

All this beyond doubt evidence was timely relayed by the Petitioner to the USAO's Attorneys, in order to forewarn them that they were being fraudulently fooled by their client-agency legal counsels and/or, that they were aiding and abetting them unconsciously or consciously, in their obviously evident fraud upon all the intervening courts, starting with their own ALJ. But more relevant for this Motion is that this

11

Petitioner timely filed a Complaint for Professional Misconduct before the USDJ-OPR regarding this set of events. Same included all the overwhelming evidence referred to above, that proves without a doubt, both quantitatively and qualitatively, that the USDE legal counsels, wantonly fabricated, inflated and manipulated their expelled and resigned auditors' pseudo-audit "findings" against the Petitioner and/or IEU, converting them into a malicious prosecution against the Petitioner and IEU, due to their racist bigotry and invidious discrimination. The USAO Attorneys were wrong in condoning and/or acquiescing to that malicious prosecution, that is in case they did not endorse it altogether or had a more active role in it. The USDJ-OPR did worse in covering up all of the above.

CONCLUSION

There is definitely a preeminent public interest behind the treatment of the complaints for misconduct filed before the USDJ-OPR and their lawful, appropriate and just handling. On the other hand, there are no administrative remedies available for the Petitioner here, regarding the cover up of the evidently obvious misconduct timely denounced in my complaint. For jurisprudence in support of this Mandamus Petition see Endnote 4.

The primary issues here that remain behind the instant Mandamus Petition are relatively simple.

Does the OPR has the discretion to ignore altogether a complaint for misconduct against all the overwhelming evidence produced?

Does the OPR has the discretion to decide or rule against the overwhelming evidence submitted justifying the complaint for misconduct filed?

In view of all of the overwhelming smoking gun and beyond doubt evidence timely produced both with the Complaint and with this Mandamus Petition, can the Respondents premature Motion To Dismiss be legally tenable?

12

Can the Respondents' posit be legally sustained in view of the fact that they have not produced to this court an iota of evidence demonstrating that the complaint for misconduct was even considered?

Is the pseudo-claim made by the Respondents that the duty to rule upon the complaint is discretional and not ministerial based upon any legal or logical basis?

Is this HDCDC in a legal, ethical and moral position to uphold a non-ruling over a complaint of misconduct whose overwhelming evidence against it necessarily and obligatorily imposes over any impartial reviewer or third party bystander, if objective, to rule against it instead of covering it up?

PRAYER

This Motion is part of our most recent request for Justice to be made upon the over IEU's 5,000 students, 500 employees, and thousands of families, including mine, which were viciously and heinously destroyed as a result of the ultra vires actions of USDE officers, the malicious prosecution of various USDE legal counsels, which for personal vendetta reasons was converted into a vindictive prosecution by some of the intervening USAO's Attorneys, as this HUSDCDC, shall easily corroborate. For all the above stated reasons, and those included in the following Endnotes, this HDCDC should issue the Mandamus Petition respectfully requested, and order the USDJ-OPR to conduct a careful, serious, and responsible investigation of the obviously evident misconduct of the complained about USAO's Attorneys, who did not comply with their ministerial and ethical duties in sifting the evidence, or rather lack thereof, provided by their client-agency, the USDE legal counsels. Instead, with blind indifference, they adopted the malicious prosecution as theirs, whether vindictively or not. So we state, allege and pray.

Today, December 17, 2007, in Cidra, P.R..

*[signature]*
Angel Ruiz Rivera
Pro Se Ipso
P.O. Box 191209, San Juan, P.R. 00919-1209.
787-435-3512 aruizrivera@aol.com

**CERTIFICATE OF SERVICE**

I, Angel Ruiz Rivera, appearing here Pro Se ipso, hereby certify that I have sent a copy of this writing today by priority mail of the USPS to the appearing counsel for the Respondents, Mr. Blanche L. Bruce, AUSA, 555 Fourth St., NW.-Room E4905, Washington, D.C. 20530. (202) 514-7250.

EXHIBITS AND ENDNOTES

1. Specific Observations section of the OIG's Quality Assurance Review Team Report

2. 02-00042 (HL).

3. Affidavit regarding this set of facts.

4. 20 U.S.C. 1070, et seq., section 482, applicable at the time of the events.

5. Pell Grant Statement of Account and ED Payment History and Account Balance.

ENDNOTES

1. THE OIG PSEUDO AUDIT "FINDINGS" WHICH ORIGINATED ALL THIS FRAUD – THE CLOCK HOUR REGULATION ISSUE.

2. THE OIG PSEUDO AUDIT "FINDINGS" WHICH ORIGINATED ALL THIS FRAUD – THE EXCESS CASH REGULATION ISSUE.

3. THE USDE's INSTITUTIONAL REVIEW BRANCH (IRB) PROGRAM REVIEW (PR) PSEUDO AUDIT "FINDING" WHICH ORIGINATED ALL THIS FRAUD – THE "UNPAID REFUNDS" ISSUE.

4. JURISPRUDENCE IN SUPPORT OF MANDAMUS PETITION.

APPENDIX 1 THE COMPLAINT FOR PROFESSIONALS MISCONDUCT BEFORE THE USDJ-OPR

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGEL RUIZ RIVERA

        Plaintiff(s),

        vs.

ALBERTO R. GONZALES, ET AL.,

        Defendant(s).

Civil Case No: **07-19  (RBW)**

## NOTICE REGARDING BULKY EXHIBIT

Pursuant to the procedures for filing documents electronically, as outlined in the previous Order of the Court, this Notice serves as notification that an exhibits to Plaintiff's Motion To Facilitate A Ruling have been filed in paper form in the Clerk's Office. It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00 p.m., Monday through Friday.

        **NANCY MAYER-WHITTINGTON**

        Clerk

**Date:**12/18/07